**Linda KANAGAWA, Appellant,**

v.

**The STATE of Missouri, By and Through its officers, David R. FREEMAN, in his official capacity as the former Director of Missouri Department of Social Services; Donald Jenkins, in his official capacity as the former Director of Missouri Department of Corrections; and Norris Williams, in his official capacity as the former Superintendent of the Central Missouri Correctional Center, Respondents.**

**No. 66069.**

Supreme Court of Missouri,
En Banc.

Feb. 26, 1985.

---

Lori J. Levine, Cullen Coil, Jefferson City, for appellant.

John Ashcroft, Atty. Gen., Mike Boicourt, Steven W. Garrett, Asst. Atty. Gen., Jefferson City, for respondents.

WELLIVER, Judge.

Appellant appeals from an order of the Circuit Court of Boone County sustaining a motion to dismiss her two count petition for personal injuries suffered when she was kidnapped, assaulted and raped by an escaped inmate of the Central Missouri Correctional Center in Jefferson City. Count I of the first amended petition names as defendant the State of Missouri. Count II names several individuals in their official capacities, including David R. Freeman, the Director of the Missouri Department of Social Services, Donald Jenkins, the Director of the Missouri Division of Corrections, and Norris Williams, the Superintendent of the Central Missouri Correctional Center.[1] The Missouri Court of Appeals, Western District, affirmed as to Count I, but reversed the dismissal of Count II and remanded the cause for further proceedings to determine the liability of the named individuals. One judge dissented and transferred the cause to this Court on the ground that the majority opinion conflicted with prior appellate decisions in this state. Rule 83.01. We now decide the cause as though on original appeal to this Court. Rule 83.09. We affirm the judgment of the circuit court.

The amended petition charges respondents with negligence in the following respects:

4. On or about July 25, 1979, Steven Foerstel, a person with a history of having committed various sexual crimes and who was a convicted rapist, was permitted to escape from the [Central Missouri Correctional Center] ... as the direct result of defendant Freeman's negligent supervision of his employees and of defendants' Jenkins and Williams negligence in performing their ministerial duties while acting for the State of Missouri, in the following respects:

They and each of them knew or in the exercise of commensurate care should

have known that: Foerstel had been transferred from the main penitentiary in Jefferson City to the Central Missouri Correctional Center; that he was a convicted rapist and had a record of having committed numerous sexual crimes; that the fences surrounding the Central Missouri Correctional Center were inadequate to confine one within those fences who desired to get out; that the gate or gate-house was manned by a female employee who was physically incapable of stopping or interfering with the escape of a person of Foerstel's background, character, and size; the the [sic] gates were not properly locked or secured; that an attempt by Foerstel to escape from the Central Missouri Correctional Center was reasonably foreseeable by defendants.

5. Defendants failed to exercise ordinary care in the performance of their ministerial duties in that they failed and refused to adequately supervise their employees and insure that the prisoners were supervised.

6. The injuries hereinafter set forth suffered by plaintiff were caused by the above described conditions existing at the Central Missouri Correctional Center and the injuries to plaintiff directly resulted from such dangerous conditions which conditions created a reasonably foreseeable risk of harm of the kind of injuries and harm which were incurred by plaintiff and the conditions heretofore described gave or should have given the defendants actual or constructive notice of the existence of said dangerous conditions, in sufficient time prior to the injuries and harm to plaintiff to have enabled defendants to have taken appropriate measures to have protected plaintiff against the results brought about by said dangerous conditions.

7. As a direct result of defendants' negligence aforesaid plaintiff was held captive, raped and kidnapped by escapee

1. At the time this suit arose, the Division of Corrections was within the Department of Social Services. *See* Omnibus State Reorganization Act of 1974 § 13. The Division is now a separate department called the Department of Corrections and Human Resources. § 217.005, RSMo Cum.Supp.1984.

Foerstel and her arms, back, limbs and shoulders were lacerated, bruised, contused, wrenched and torn.

Appellant prays for $100,000 in damages in each count.

Respondents moved to dismiss the amended petition contending that (1) the State was immune from suit by virtue of sovereign immunity; (2) the individual defendants were immune from suit by virtue of official immunity; and (3) the doctrine of respondent superior did not operate to hold public officials vicariously liable for the acts or omissions of subordinate employees. The circuit court sustained the motion to dismiss without explanation.

■ In reviewing the circuit court's dismissal of the amended petition, we must determine if the facts pleaded and the inferences reasonably drawn therefrom state any ground for relief. We treat the facts averred as true and construe all averments liberally and favorably to appellant. *Detling v. Edelbrock*, 671 S.W.2d 265, 267 (Mo. banc 1984); *Shapiro v. Columbia Union National Bank & Trust Co.* 576 S.W.2d 310, 312 (Mo. banc 1978), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979).

I

The circuit court dismissed appellant's claim against the State of Missouri presumably after concluding that the State was protected from suit under the sovereign immunity statute. § 537.600, RSMo 1978. Appellant challenges that conclusion, contending that the amended petition states a claim falling within one of the two statutory exceptions to immunity. She relies on the provision waiving the State's immunity from liability and suit in cases involving:

Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the danger-

ous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

§ 537.600(2).

The legislature enacted the sovereign immunity statute in response to the judicial abrogation of the common law sovereign immunity doctrine in *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977). The statute in relevant part provides that "[s]uch sovereign or governmental tort immunity as existed at common law in this state prior to [the *Jones* decision] ... shall remain in full force and effect ..." § 537.600. However, in an apparent attempt to mitigate the sometimes harsh effects of the common law doctrine, the legislature expressly waived sovereign immunity as to tort claims arising from the negligent operation of motor vehicles by public employees and from the dangerous condition of a public entity's property if, and to the extent that, the public entity had acquired liability insurance. *Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864, 870 (Mo. banc 1983); § 537.610.1, RSMo 1978.[2] We previously have upheld the constitutionality of the statute, *Winston v. Reorganized School District R–2*, 636 S.W.2d 324 (Mo. banc 1982), and have stated that the "statutory provisions that waive sovereign immunity must be strictly construed." *Bartley v. Special School District of St. Louis County*, *supra* at 867. *See also Beiser v. Parkway School District*, 589 S.W.2d 277, 280 (Mo. banc 1979).

■ The dangerous condition exception to sovereign immunity contained in § 537.-

---

**2.** We note that the amended petition, filed prior to our decision in *Bartley*, does not allege procurement of liability insurance by the State. It is unnecessary to afford appellant an opportunity to correct this omission in light of our disposition of Count I on the merits.

600(2) sets forth four prerequisites conditioning the waiver of immunity. A plaintiff seeking to state a claim under the exception must allege facts that demonstrate: (1) a dangerous condition of the property; (2) that the plaintiff's injuries directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind the plaintiff incurred; and (4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the dangerous condition. Appellant has alleged that the prison property was maintained in a dangerous condition in that the fences surrounding the prison were inadequate to prevent an escape and that the prison's gate was left unsecured. The question presented is whether these allegations suffice to state a "dangerous condition" as that term is used in § 537.600(2).

Instructive on this issue is *Twente v. Ellis Fischel State Cancer Hospital,* 665 S.W.2d 2 (Mo.App.1983), a case similar to the one now before us. In *Twente,* the plaintiff sued a state-owned hospital and the Department of Social Services for injuries she sustained when assaulted and raped on the hospital's parking lot. Suit was brought on the theory that defendants, by negligently maintaining their property in a dangerous condition, exposed plaintiff to an intentional tort at the hands of a third party. The dangerous condition alleged included knowledge of prior assaults on or near the parking lot, a inadequate security staff to effectively guard the grounds and the absence of the guard assigned to police the parking lot. The Western District held that the petition failed to allege a "dangerous condition." The court concluded, after reviewing the concerns prompting enactment of the sovereign immunity statute along with the language of § 537.600(2) and the meaning generally ascribed to the term "dangerous condition" in this and other states, that "dangerous condition" as used in § 537.600(2) refers to defects in the physical condition of the public entity's property. *Id.* at 11–12.

■ We believe the court of appeals in *Twente* correctly interpreted the statute. It is readily apparent that the legislature, by including the various elements set forth above conditioning the waiver of immunity, sought to narrowly delimit the scope of § 537.600(2). It would violate both this manifest legislative purpose and our policy of strictly construing provision waiving sovereign immunity to hold that "a dangerous condition" refers to a condition other than a defect in the physical condition of public property.

■ The allegations in the petition fall short of averring a defect, through either faulty construction or maintenance, in the condition of the prison's property. Indeed, the facts alleged demonstrate beyond doubt that the escaped inmate, and not the condition of the State's property, caused appellant's injuries. To state a claim under § 537.600(2), a plaintiff must allege more than that a public entity's property in some remote way presaged the commission of a tort by another party. *See Bates v. State,* 664 S.W.2d 563 (Mo.App.1983). Count I was properly dismissed.

II

Our conclusion that § 537.600 renders the State immune from suit does not necessarily foreclose the possibility that the individual respondents may be held liable for the injuries appellant sustained. The gravamen of Count II is that the named state officials failed to exercise reasonable care to prevent the escape of the inmate "in that they failed and refused to adequately supervise their employees and insure that the prisoners were supervised." The issue before us is whether respondents are protected from suit by official immunity.

■ It is well established that public officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions, but they may be held liable for torts committed when acting in a ministerial capacity. *Rustici v. Weidemeyer,* 673 S.W.2d 762, 768–69 (Mo. banc 1984); *Reed v. Con-*

*way,* 20 Mo. 15, 32 (1854); *Smith v. Lewis,* 669 S.W.2d 558 (Mo.App.1983); *Jackson v. Wilson,* 581 S.W.2d 39, 42 (Mo.App.1979). The official immunity doctrine serves an important function in our society. Courts and legal commentators have long agreed that society's compelling interest in vigorous and effective administration of public affairs requires that the law protect those individuals who, in the face of imperfect information and limited resources, must daily exercise their best judgment in conducting the public's business. *Jackson v. Wilson, supra; Gregoire v. Biddle,* 177 F.2d 579 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed.2d 1363 (1950); W. Prosser, Law of Torts § 132 at 987 (4th ed.1971); Restatement (Second) of Torts § 895D, comments b, d (1965). "If an officer is to be put in fear of financial loss at every exercise of his official functions, manifestly the interest of the public will inevitably suffer from the too complacent attitude thus engendered." *Smith v. Berryman,* 272 Mo. 365, 199 S.W. 165, 167 (Mo. banc 1917).

■ Whether an act can be characterized as discretionary depends upon the degree of reason and judgment required. It has been said that a discretionary act requires "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or course pursued." *Rustici v. Weidemeyer, supra,* at 769, *quoting Jackson v. Wilson, supra,* at 43. In a similar vein, we stated in *Sherrill v. Wilson,* 653 S.W.2d 661, 667 (Mo. banc 1983), that " '[d]iscretion' relates not so much to the exercise of naked and unrestrained power as to the exercise of judgment" and cautioned that "courts should not construe the term 'discretionary' too narrowly" lest they frustrate "the need for relieving public servants of the threat of burdensome litigation." *Id.* at 65.

■ A ministerial function, in contrast, is one "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authori-

ty, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Rustici v. Weidemeyer, supra,* at 769, *quoting Yelton v. Becker,* 248 S.W.2d 86, 89 (Mo.App.1952). While the above definitions provide useful guidelines, in the final analysis the decision as to whether a public official's acts are discretionary or ministerial must be determined by the facts of each particular case after weighing such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity.

■ Appellant argues that the allegations of negligence leveled against respondents—that they failed to ensure that the gates to the prison were locked and that the facility was adequately secured—concern functions that should be performed in a regular and prescribed manner and therefore must be considered ministerial. The court of appeals found the contention persuasive, but we believe appellant has mischaracterized the essential nature of respondents' duties with respect to the supervision of prison facilities and employees. We do not doubt that certain functions affecting prison security must be routinely performed and might fairly be described as ministerial. These functions, however, are carried out by security personnel who are not party to this suit and for whom respondents cannot be held vicariously liable. *See Rennie v. Belleview School District,* 521 S.W.2d 423, 425 (Mo. banc 1975); *Jackson v. Wilson, supra,* at 46. Respondents perform an entirely different function in connection with prison supervision. As the ranking officials within the State's correctional system, they are responsible for, among other things, designing policies and standards for prison security that, when carried out by subordinates, safeguard both inmates and the public from physical harm. These decisions necessarily involve the exercise of a substantial degree of judgment and require consideration of the manifold aspects of prison operation, the nature and physical design of the facility in

question and the vagaries of state appropriations. We believe such decisions should be made free from the fear of civil litigation and liability.

Holding respondents immune from suit is consistent with the result in *Jackson v. Wilson, supra.* In *Jackson,* the plaintiff sued the Director of Parks and Recreation for injuries sustained when diving into a river in a state park. The plaintiff alleged that the Director negligently formulated policies for the supervision of the park. Noting that many factors must be weighed in preparing such policies, the Western District concluded the Director was acting in a discretionary capacity and held that he was immune from suit.[3]

Inasmuch as we hold that respondents are immune from suit, we need not reach the issues addressed in *Sherrill v. Wilson, supra. See also Jamierson v. Dale,* 670 S.W.2d 195 (Mo.App.1984); *Nelson v. Freeman,* 537 F.Supp. 602 (W.D.Mo.1982), *aff'd sub nom. Nelson v. Missouri Division of Family Services,* 706 F.2d 276 (8th Cir. 1983). *Compare Ryan v. State,* 134 Ariz. 308, 656 P.2d 597 (1982); *Cansler v. State,* 234 Kan. 554, 675 P.2d 57 (1984).

The judgment is affirmed.

All concur.

**3.** We have examined *State v. Silva,* 86 Nev. 911, 478 P.2d 591 (1970), cited to us by appellant, and find its reasoning unpersuasive and inconsistent with Missouri authorities.