Dennis R. NAGY, Plaintiff/Respondent,

v.

**MISSOURI HIGHWAY AND TRANS-
PORTATION COMMISSION, De-
fendant/Appellant.**

No. 60216.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 14, 1992.

649

John D. Warner, Jr., St. Louis, for defendant/appellant.

Cordell P. Schulten, Clayton, for plaintiff/respondent.

GRIMM, Presiding Judge.

Plaintiff Dennis Nagy was struck and injured as he drove across the newly opened southbound lanes of Highway 141. The lanes had been constructed under the direction of the Missouri Highway and Transportation Commission (MHTC).

Plaintiff sued MHTC under the sovereign immunity waiver statute for dangerous condition of a government entity's property. He alleged MHTC's failure to warn the new lanes were opened created the dangerous condition. The jury agreed and assessed 25% fault to MHTC.

On appeal, MHTC contends (1) the trial court lacked subject matter jurisdiction; (2) plaintiff failed to present evidence of the three elements required by the sovereign immunity waiver statute; (3) it had no duty to warn of the lane openings; (4) matters relating to highway design are beyond the knowledge of lay jurors and no expert testimony was presented; (5) the verdict director (a) included extraneous material, (b) did not include all the elements necessary for recovery, and (c) erroneously implied a duty to warn of the lane openings; and (6) the verdict form based on MAI 37.07 erroneously states the law. We affirm.

## I. Background

In July of 1984, MHTC entered into a contract with Bangert Brothers Construction Company for the construction of new lanes for Highway 141 at its intersection with Interstate 44. The contract set forth the terms, conditions, and specifications for the construction. Design drawings for each stage of the project also had been prepared at this time.

A mistake in the design plans for the traffic signal control configuration was discovered in June of 1987. A change order was then entered providing for temporary traffic control signals. These signals were placed on span wires between wooden poles at each corner of the intersection.

For a week or so prior to the opening of the new lanes, construction barrels were placed along the Interstate 44 exit ramp and across the unopened lanes of 141 to the far lanes where there was a stoplight. The far lanes handled both the north and south traffic for Highway 141.

On August 13, 1986, prior to 11:30 p.m., MHTC placed permanent striping on the highway. The construction barrels were removed from the southbound lanes but not from along the ramp. The temporary tape was picked up from either side of the exit ramp and across the new southbound lanes. A 24-inch bar was painted at the end of the eastbound exit ramp and across both lanes.

Temporary signals for the 44 East exit ramp, which had been there for at least the preceding week, were left in place. Two blinking signals for southbound Highway 141 traffic were moved over the new lanes. The stopping point for traffic travelling down the 44 East exit ramp was moved back to the western-most edge of the new southbound lanes. At 4:00 p.m. that day, Bangert Brothers and MHTC agreed to open the southbound lanes.

Plaintiff had travelled to and from work through the Highway 141 and Interstate 44 interchange regularly that summer. On August 13, 1986, at 11:30 p.m., he drove down the exit ramp as he had previously that week. The construction barrels still lined the ramp, and the red traffic control

signals were in the same place as in prior weeks. Plaintiff continued across the new southbound 141 lanes toward the middle of the intersection which was the old stopping point for eastbound traffic. His car was struck by a vehicle heading south across the new lanes.

The distance from the new stopping point to the temporary signals was at least 124 feet. This distance exceeded that recommended by the Uniform Manual for Traffic Control Devices. The design standard required the use of a near-side signal for a distance exceeding 120 feet. In addition, span wires extended across the western edge of the southbound lanes, but no signals had been placed there at the time of the accident.

The jury assessed plaintiff's damages at $30,000. It assessed 25% fault to MHTC, 25% fault to Bangert Brothers, and 50% fault to plaintiff.

## II. Jurisdiction

■ In its first point, MHTC asserts the trial court erred in failing to grant its motion for directed verdict because the trial court lacked subject matter jurisdiction over the claim. MHTC contends that Missouri Constitution article IV, § 29, "vests all questions concerning the design of highways solely with the Missouri Highway and Transportation Commission, thereby depriving [the trial court] of jurisdiction over the subject matter of this suit."

Article IV, § 29 reads:

The department of highways and transportation shall be in charge of a highways and transportation commission.... The highways and transportation commission shall have authority over all state transportation programs and facilities as provided by law, including, but not limited to, bridges, highways, aviation, railroads, mass transportation, ports, and waterborne commerce, and shall have authority to limit access to, from and across state highways where

the public interest and safety may require.

Mo. Const. art. IV, § 29.

The state has specifically waived sovereign immunity for injuries caused by the dangerous condition of a public entity's property. § 537.600.1(2).[1] MHTC asserts that article IV, § 29 "places a limit on the degree to which the statute waives sovereign immunity and places the design of highways, at issue in this case, within the discretion of MHTC."

In *Brown v. Missouri Highway and Transp. Comm'n*, 805 S.W.2d 274 (Mo. App.W.D.1991), plaintiff appealed the dismissal of his petition against MHTC which he brought under § 537.600.1(2). He alleged injuries resulting from a dangerous property condition due to a defective highway design. *Id.* at 275–76. MHTC contended that article IV, § 29 of the Missouri Constitution abrogates the applicability of § 537.600. The Western District said MHTC's argument was without merit. *Id.* at 278. "Plaintiff's allegations in his petition fall within those instances where sovereign immunity is waived as set out by § 537.600." *Id.*

MHTC's argument in this case is indistinguishable from its argument in *Brown*. Point denied.

## III. Sovereign Immunity Exception

In its second point, MHTC asserts the trial court erred in failing to grant its motion for a directed verdict because plaintiff failed to present evidence of three of the elements required by § 537.600.1(2). MHTC asserts plaintiff failed to prove (1) the public entity owned the property, (2) the property was in a dangerous condition, and (3) the dangerous condition caused the injury.

In our review, we consider the evidence in a "light favorable to the plaintiff and take his evidence as true, giving him the benefit of all reasonable inferences arising from the evidence, rejecting all unfavorable inferences and disregarding the defendants' evidence unless it aids the plaintiff's

**1.** All statutory references are to RSMo (Cum. Supp.1990) unless otherwise indicated.

case." *Todd v. Watson*, 501 S.W.2d 48, 50 (Mo.Div. 2 1973).

### A. Public entity owned the property.

During trial, the court took judicial notice of § 226.010, et seq., RSMo 1986, which provides for the creation and operation of MHTC. Section 226.130, RSMo 1986, gives MHTC the power to "[p]repare plans, specifications and estimates for all *state* highways; [and] []et all contracts for the construction or improvement of *state* highways." (emphasis added).

In discussing MHTC's motion for a directed verdict, the trial judge said, "the mere fact the State Highway Commission was overseeing and supervising and entered into a contract with Bangert Brothers would show they had the authority. And I suppose the statutes would tell us they wouldn't be doing that unless it was a state highway."

We agree with the trial judge. Plaintiff's exhibit 23, the contract between MHTC and Bangert Brothers, was entered into evidence. The contract was for the construction of the intersection at which the plaintiff was injured. This evidence is sufficient for a jury to find that the State of Missouri owned the property and that MHTC, through its authority vested by the State, owned the property within the meaning of § 537.600.1(2).

MHTC relies on *Claspill v. State of Missouri, Div. of Economic Dev.*, 809 S.W.2d 87 (Mo.App.W.D.1991) to support its contention that the ownership element is not met. That case involved an allegedly defective road at a railroad crossing. "The trial court dismissed the petition because the land upon which the traffic control devices were located was not owned by the State of Missouri but by other public entities." *Id.* at 88. The appellant in *Claspill* argued that "it is not necessary that the dangerous condition of land created by a public entity's employees be owned or occupied by the same public entity as that for which the negligent employees are employed ... [but rather] may be occupied by *any* public entity." *Id.* The western district held that

the legislature did not so broadly expand the waiver of sovereign immunity so as to make all public entities liable for conditions on other public entities' lands over which they have some control. It surely cannot be the intent of the legislature to make the state liable for conditions on property which is not owned by the state.

*Id.* at 89.

*Claspill* is inapplicable. It involved a suit against a public entity which did not own the property which was the subject of the appellant's allegations. Here, the evidence was sufficient to show that MHTC owned the highway under the meaning of the statute.

### B. Dangerous Condition

■ MHTC also asserts that "as a matter of law, Plaintiff failed to prove a 'dangerous condition' of the property." It states that the failure to warn that a road is not functioning properly does not constitute a dangerous condition. Rather, it says, a plaintiff must prove a defect in the physical condition of the road.

In support of its position, MHTC relies on *Kanagawa v. State by and through Freeman*, 685 S.W.2d 831 (Mo. banc 1985). There, the plaintiff alleged she was kidnapped, assaulted, and raped by an escaped prisoner. *Id.* at 833–34. She contended the prison property constituted a dangerous property condition because the gate was not properly secured and the surrounding fences were inadequate to prevent an escape. *Id.* at 833. The supreme court affirmed dismissal of plaintiff's claim. It held sovereign immunity had not been waived because the allegations fell short of "averring a defect, through either faulty construction or maintenance, in the condition of the prison's property." *Id.* at 835.

Subsequently, our appellate courts have held some petitions which did not allege a physical defect in the public entity's property sufficient under the dangerous property exception. *See Alexander v. State*, 756 S.W.2d 539 (Mo. banc 1988) (placement of ladder against a partition created physical deficiency which constituted dangerous

condition); *Jones v. St. Louis Housing Auth.*, 726 S.W.2d 766 (Mo.App.E.D.1987) (decedent struck by debris flung from a lawn mower; presence of debris was physical deficiency which created dangerous property condition).

Other decisions since *Kanagawa* include factual situations involving negligent, defective or dangerous highway design. *See Donahue v. City of St. Louis*, 758 S.W.2d 50 (Mo. banc 1988) (allegations of fallen stop sign at an intersection alleged to have caused a collision sufficient to plead a dangerous condition of property under § 537.-600.1(2)); *Wilkes v. Missouri Highway and Transp. Comm'n*, 762 S.W.2d 27 (Mo. banc 1988) (a dangerous condition of property existed where a bridge was situated so that drivers had no notice of it until almost on it and where there was no warning of ice on the bridge or to reduce speed; summary judgment was reversed); *Cole v. Missouri Highway and Transp. Comm'n*, 770 S.W.2d 296 (Mo.App.W.D.1989) (allegations of failure to warn of a sudden curve in a road and an obscured intersection were sufficient to plead dangerous condition of property); *Fox v. City of St. Louis*, 823 S.W.2d 22 (Mo.App.E.D.1991) (the failure to reinstall a traffic control device which was not in place at an intersection where a collision occurred was encompassed in the sovereign immunity exception for dangerous condition of property; summary judgment was reversed).

Plaintiff alleged that MHTC failed to adequately warn him of what was essentially a new intersection. In light of the foregoing cases, the situation alleged by plaintiff clearly fits within the sovereign immunity waiver.

### C. Causation

■ Plaintiff has also sufficiently proved causation. Plaintiff testified that for a week or more prior to the accident, the exit ramp was lined with construction barrels to direct traffic down the ramp, across the first lanes of Highway 141, and to the far lanes where there was a stoplight. On August 13, the day of the accident, the barrels were still lining the exit ramp, and the temporary light at the far side of the intersection had not been moved. A state highway department employee testified the light violated established standards for signal placement. Plaintiff was braking to stop at the same place he had previously when a car hit his car on the left side. This evidence is sufficient to prove MHTC's failure to warn of the lane openings caused the accident. Point denied.

### IV. No Duty to Warn

■ MHTC's third assertion of error is an elaboration of its second point. It alleges MHTC did not breach a duty to warn of the lane openings because (1) MHTC had no duty to warn and (2) plaintiff admitted he was already aware of the construction and periodic lane changes. Therefore, MHTC states the failure to warn driver of something he already knew could not have caused his injuries.

Section 226.130(8) and (9) vests MHTC with the duty to let all contracts for the construction or improvement of state highways. One of the "primary purposes in the design of roads and highways.... [is] safety." *Donahue*, 758 S.W.2d at 52. Plaintiff's allegation of a failure to warn is an allegation of a breach of this duty to design safe roads.

Further, plaintiff at no time admitted that he knew the southbound lanes were open. To the contrary, he testified the construction barrels were still lining the ramp, the temporary signal was in the same place, and he proceeded through the intersection as if the southbound lanes were not open. This testimony at least creates a jury question as to whether plaintiff should have known the lanes were open. Point denied.

### V. Expert Testimony

■ In its fourth point, MHTC alleges the trial court erred in failing to grant its motion for a directed verdict because plaintiff failed to present expert testimony to prove the highway design was defective. Matters relating to highway design, it claims, are beyond the knowledge of lay jurors.

"[W]here the conduct in question does not involve skill or technique in an area where knowledge of such is a peculiar possession of the profession and does involve a matter which any layman (or court) could know, then such 'professional' testimony is not necessary." *Goodenough v. Deaconess Hosp.*, 637 S.W.2d 123, 126 (Mo.App. E.D.1982) (quoting *Steele v. Woods*, 327 S.W.2d 187, 199 (Mo.Div. 2 1959)).

In this case, the question for the jury was whether MHTC failed to warn drivers that the southbound lanes of Highway 141 were opened and whether this constituted a dangerous condition. The jury was competent to make this determination without the aid of expert testimony. Point denied.

## VI. Verdict Director and Verdict Form

In its final two points, MHTC asserts that the trial court erred in giving plaintiff's not-in-MAI verdict director and in giving a verdict form patterned after MAI 37.07.

MAI does not contain an appropriate pattern instruction. When a not-in-MAI instruction is given, the instruction shall be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Rule 70.02(e). MHTC bears the burden of demonstrating that the instruction was prejudicial in order for it to constitute reversible error. *Lee v. Mirbaha*, 722 S.W.2d 80, 83 (Mo. banc 1986).

Further, "in a verdict directing instruction based on a statutory violation,[2] it is not necessary to use the exact language of the statute as long as the substance of that language is incorporated." *Dennis v. St. Louis Bd. of Educ.*, 809 S.W.2d 20, 22 (Mo.App.E.D.1991). A verdict director is not defective if the omitted element is necessarily inferred from the other required findings, *Reed v. Sale Memorial Hosp. and Clinic*, 698 S.W.2d 931, 938 (Mo.App. S.D.1985), and it is not necessary to include

uncontested elements or facts. *Huff v. Union Electric Co.*, 598 S.W.2d 503, 515 (Mo.App.E.D.1980).

The verdict director which was given is not a model. The instruction may contain some extraneous evidentiary facts; however, those facts were not contested at trial, and MHTC has not shown prejudice. In applying the enunciated rules, we find the instruction adequately advised the jury and MHTC was not prejudiced. Point denied.

As to the verdict form, MHTC does not contend that MAI 37.07 [1986 New], comparative fault verdict form, does not apply. Rather, it argues that it erroneously states the law.

"If an MAI instruction applies, the instruction must be given to the exclusion of all others." *Elliott v. Kesler*, 799 S.W.2d 97, 104 (Mo.App.W.D.1990). The verdict forms published in MAI are approved and adopted by the supreme court and "must be used." *See, e.g.*, Supreme Court of Missouri en banc Order dated May 12, 1981, found at p. XXI in MAI (Third Ed.), and Supreme Court of Missouri en banc Order dated April 9, 1991, found at p. XXI in MAI (Fourth Ed.).

The verdict form given in this case was approved by the Missouri Supreme Court in 1986. It was applicable when this case was tried in 1990, and it appears unchanged in the new 1991 MAI Fourth Edition. Point denied.

The judgment is affirmed.

CRANDALL, J., concurs.

SATZ, J., concurs in result.

---

**2.** Section 537.600 is a procedural law, and, as such, "does not create a new cause of action but provides a remedy for a cause of action already existing for which redress could not be had because of the immunity." *Wilkes v. Mo. High-* *way and Transp. Comm'n*, 762 S.W.2d 27, 28 (Mo. banc 1988). However, the statute also sets out the cause of action for which the remedy is provided. Therefore, the verdict director may be based on the elements set out in the statute.