**Robert KORNBLUM, Appellant,**

v.

**ST. LOUIS COUNTY, MISSOURI; John Doe, an unknown person; and John Doe II, an unknown person, Appellees.**

No. 93–4111.

United States Court of Appeals, Eighth Circuit.

Submitted May 23, 1995.

Decided Dec. 22, 1995.

Gerald M. Dunne, St. Louis, Missouri, argued, for appellant.

Robert E. Fox, Jr., Clayton, Missouri, argued (John A. Ross, St. Louis County Counselor, on the brief) for appellees.

Before RICHARD S. ARNOLD, Chief Judge, and McMILLIAN, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

The issue in this case is whether St. Louis County satisfied the notice requirements of the Fourteenth Amendment before it razed Mr. Kornblum's house. We conclude that the district court erred in granting summary judgment for the County, and therefore reverse and remand for further proceedings. (We state hereafter such facts as the present record evidence would justify a jury in finding for Mr. Kornblum.)

I.

Prior to Mr. Kornblum's purchase of the relevant house, and without his knowledge, the County had initiated proceedings to demolish the structure because it was in an advanced state of disrepair. In March, 1987, a County building inspector visited the premises and posted notices that he had declared the structure to be a public nuisance. Such a notice warns that if the building is not repaired or demolished, the County would do it and send the owner the bill. Saint Louis. County Ordinance No. 11,718, § 125.4.1

(1984). The posting was repeated three months later when the inspector learned that the original notices were no longer posted. A title company performed a title search and reported to the County that the property was owned by Orville and Daisy Glendinning, and that Orville Glendinning was deceased. In fact, Daisy Glendinning had also died, a few months before the County had initially inspected the property.

In July, 1987, the County mailed a notice that the property had been declared a nuisance to "Daisy Glendinning c/o Pat Andrew" at Mr. Andrew's address, because his name appeared on the County tax rolls as the recipient of the tax bills for the property in question. A similar notice was published in a local newspaper. A Saint Louis County ordinance provides, however, that such notices must be "filed and recorded" in the office of the St. Louis County Recorder of Deeds as well. Saint Louis County Ordinance No. 11,-718, § 125.4.3. No such notice was filed or recorded in this case.

The County subsequently published in the same local newspaper notice of a hearing on the question of whether the house should be demolished, and mailed notice of that hearing to "Orville Glendinning c/o Pat Andrew." In October, 1987, the County held the hearing, but no one purporting to be property owners, or their representatives, appeared. The hearing officer concluded that the house was an unfit structure and issued an order that it be demolished. The order provided that "all affected parties" would be notified that they had thirty days to remove the building themselves before the County would take bids for the demolition. We have been unable to determine from the record how, or even whether, such notice was given.

More than four months after the order of demolition was issued, Mr. Kornblum purchased the property from the heirs of Daisy Glendinning. Before closing, Mr. Kornblum conducted a title search that revealed that the heirs of Daisy Glendinning were the owners of the property. The title search revealed no reference to any nuisance declarations or demolition orders of any kind, and could not have, since none had been filed or recorded. Mr. Kornblum inspected the

premises on the date of closing, and found no notice posted on the premises.

Mr. Kornblum began renovation of the premises. Two months after he had purchased the property and six months after the hearing he learned from his landscapers, who had already embarked on improvements to the property, that County employees had entered the premises and demolished the house. Since the demolition, Mr. Kornblum has attempted to sell the premises but to no avail.

Mr. Kornblum filed the present action under 42 U.S.C. § 1983 and Missouri law, alleging in part that the County deprived him of his property without due process of law. The district court granted summary judgment for the County, and dismissed Mr. Kornblum's pendent state claims for lack of jurisdiction. *Kornblum v. St. Louis County,* 835 F.Supp. 1127, 1129 (E.D.Mo.1993). Mr. Kornblum appealed. A panel of our court, one judge dissenting, affirmed, finding that (a) assuming Mr. Kornblum had standing to assert the lack of notice to the Glendinnings, the County had given constitutionally sufficient notice to the heirs, and (b) Mr. Kornblum was not himself entitled to notice because his identity was not ascertainable at the time the County gave notice to Andrew. *Kornblum v. St. Louis County,* 48 F.3d 1031 (8th Cir.1995). We voted to consider this case en banc, and now reverse and remand for further proceedings.

## II.

■ The Due Process Clause of the Fourteenth Amendment requires that a State, prior to taking an action affecting an interest in property, provide notice that is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of that action. *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180 (1982); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). It is true that *Mullane* deals with a complaint about not being afforded an opportunity to be heard, and here plaintiff complains of a failure to give notice that certain property had been declared a nuisance by a County building inspector. Mr. Kornblum is thus not complaining about not being afforded a hearing. In fact, by hypothesis, notice of the hearing that was held later would have been useless to Mr. Kornblum, since he did not purchase the property until well after that hearing was held. But we do not find these differences constitutionally significant. The declaration itself was the beginning of an adjudicatory process that was likely to end (and did end) in the destruction of a building, and it is on that process as a whole that the Constitution makes demands of fairness.

■ Given that the total destruction of the house in question was contemplated, notice to the owners, namely, the Glendinning heirs, by mail or personal service, was constitutionally required if their names and addresses were reasonably ascertainable. *Mennonite Bd.,* 462 U.S. at 800, 103 S.Ct. at 2712. We also believe that some form of notice to future purchasers such as Mr. Kornblum was called for under the circumstances of this case. The Supreme Court has recognized that persons "whose interests are either conjectural or future" are entitled to some consideration when notice is provided. *See Mullane,* 339 U.S. at 317, 70 S.Ct. at 658–59. While the Court was evidently speaking there of present owners of vested and contingent future interests, we see no relevant constitutional differences between such persons and prospective purchasers in an active land market. The identity of the present owners of contingent future interests is frequently as unascertainable as the identity of subsequent buyers. And both classes of persons are likely to suffer loss in equal measure from a lack of notice.

■ It may or may not be the case that due process requires governmental entities to employ means like those provided by the ordinance here to give notice to future purchasers of proposed state actions that will affect their interests. Perhaps nothing else could provide notice reasonably calculated to apprise those purchasers of such actions. We need not reach that question in this case, however. We hold only that the means resorted to here to give notice to prospective purchasers did not, in the circumstances of

this case, satisfy the requirements of due process. Mailing notice to a deceased owner is manifestly defective, no matter whose due process rights are being considered. Posting is an especially ephemeral means of giving notice, even to present possessory owners, and will very frequently be ineffective in providing a warning to future purchasers, because of the real possibility that the notices will have disappeared before prospective buyers inspect the premises.

We believe that the newspaper notices suffered from a similar constitutional infirmity. We are mindful that the Supreme Court has indicated that publication is sufficient in certain circumstances to give notice to holders of future interests whose identity was difficult to determine. *Mullane*, 339 U.S. at 317, 70 S.Ct. at 658–59. But, in the first place, future purchasers are frequently in circumstances entirely different from those in which the owners of future interests find themselves. Owners of future interests, even contingent owners, usually know, or are reasonably charged with knowing, of the existence of their interests. Future purchasers, on the other hand, are not put in a position of watchfulness with respect to specific property until they form an interest in buying it. It is not fair or reasonable to charge them with notice of a newspaper publication that occurred before their interest in buying was formed, nor can knowledge of such publication be expected to reach them afterwards, given their entirely reasonable habit of relying on record evidence as security for their purchases.

■ More importantly, contrary to what the dissent maintains, we believe that what due process requires by way of notice does indeed depend upon what means of providing it lie within easy reach. Notice that is constitutionally sufficient is "such as one desirous of actually informing the [interested parties] might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315, 70 S.Ct. at 657. In deciding what form of notice was reasonably adopted in the circumstances of *Mullane*, the Court specifically considered "the practical difficulties and costs that would be attendant on" other means of giving notice. *Id.* at 317, 70 S.Ct. at 658–59. Com-

pliance with the recording ordinance in force here was simple, straightforward, and virtually costless to the County, all of which tends to make the County's failure to comply with it unreasonable within the meaning of *Mullane* and thus a violation of due process. It can come as no surprise that questions of due care and due process turn on similar kinds of considerations. The measure of each is largely what one is bound reasonably to do under relevant circumstances. Had the County simply followed its own ordinance, an ordinance the office of which is mainly to give notice to prospective purchasers, Mr. Kornblum would have had constructive notice of the impending demolition before he purchased the property. He could then have taken whatever defensive measures seemed appropriate, including refusing to buy the house, or persuading the County to rescind its order or delay the execution of it.

We believe, moreover, that the delay in demolishing the property contributed significantly to the unreasonableness of the notice in this case. A considerable time elapsed between the time that the County condemned the building and the time that it demolished it, and this cannot, in the nature of things, have been unusual. The identity of the people who will want notice will frequently change over time because of this kind of delay, and the County is charged with knowing this. (Here, the *number* of interested people actually decreased, because the heirs of Daisy Glendinning had no interest in the property by the time of demolition, but Mr. Kornblum, unfortunately for him, entered the picture.) Because the County delayed a long time before it demolished the building, it created a foreseeable and appreciable risk that its action would affect a set of interested parties different from those whose interests were affected when the house was declared a nuisance. For this reason, we disagree with the contention that whether a party is entitled to notice is fixed at the time that condemnation procedures commence, especially when the government delays its demolition for a substantial length of time. *But see Nitchie Barrett Realty Corp. v. Biderman*, 704 F.Supp. 369, 372 (S.D.N.Y.1988). Recording, under these circumstances, would have served to alert those who, like Mr.

Kornblum, purchase property freighted with delayed governmental action that is otherwise latent so far as the record evidence is concerned.

In short, while due process may not require that governmental entities create and employ recording devices like the one available to St. Louis County in this case, due process does require governmental entities to employ such a device if one is available, if they do not employ some other constitutional means of providing notice to prospective purchasers. We therefore conclude that the record on summary judgment forecloses a conclusion that the County acted to provide notice that was reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.

### III.

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

HANSEN, Circuit Judge, with whom JOHN R. GIBSON, FAGG, WOLLMAN and MURPHY, Circuit Judges, join, dissenting.

Because our court departs from well-established authority and turns a case of simple county government carelessness into a constitutional claim under section 1983, we respectfully dissent. Saint Louis County made a mistake in not following the specific procedures outlined in its ordinance. While such a mistake may raise state law tort claims,[1] in our view it did not violate constitutional due process. To say in this case that a possibly negligent violation of a county ordinance implicates constitutional due process is to say that whenever a county adds additional notice procedures to the minimum notice re-

quired by due process, the Constitution guarantees the county's compliance with the additional procedures. We cannot agree with such an extension of § 1983 liability.

To assert a constitutional tort, Mr. Kornblum must show that the County razed the house he bought from the Glendinning heirs without complying with the minimum constitutional protection guaranteed to him—not that the County violated its own ordinance. This constitutional floor requires the County to provide " 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180 (1983) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). If the names and addresses of "interested parties" are "reasonably ascertainable," the minimum constitutional protection requires the County to provide such "[n]otice by mail or other means as certain to ensure actual notice...." *Mennonite*, 462 U.S. at 800, 103 S.Ct. at 2712. If the interested parties are unascertainable in the "due course of business," all the Constitution requires is that the County provide notice by publication in a local paper. *Mullane*, 339 U.S. at 316–17, 70 S.Ct. at 657–59. Thus, *Mullane* and *Mennonite* make clear that notifying ascertainable parties by mail and unascertainable parties by publication is all the notice that due process requires.

Saint Louis County's ordinance satisfies these constitutional requirements and also includes additional procedures that go beyond the constitutional minimum. Notably, the ordinance requires the County to file and record its notice of declaration of nuisance

---

1. At oral argument, Mr. Kornblum asserted he would probably have no state remedy because of the state's "sovereign immunity." Without digressing into a lengthy discussion of the differences between sovereign immunity (governmental-proprietary test) and official immunity (discretionary-ministerial test), if the county officials' action in forgetting to record notice was negligent and falls within their ministerial functions, they may not be immune from a lawsuit. *See Hagedorn v. Adams*, 854 S.W.2d 470, 476 (Mo. App.W.D.1993) (quoting *Kanagawa v. State By*

*and Through Freeman*, 685 S.W.2d 831, 836 (Mo. 1985) (en banc)) ("A ministerial function ... is one 'of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.' " (citation and quotation omitted)). Additionally, we observe that Kornblum's original complaint included three pendent state claims, alleging trespass, abuse of process, and slander of title.

with the Recorder of Deeds. This "record notice" requirement is part of the Saint Louis County ordinance, but its fulfillment is not part of Mr. Kornblum's constitutional guarantees under the Due Process Clause.

Given this framework, we compare the County's actions in this case with the minimum procedures required under the Due Process Clause. The County mailed notice to Daisy Glendinning (whom the title search showed was alive) in care of the person the property tax rolls showed was her agent, and published notice in the local paper. Even though Mrs. Glendinning had in fact passed away, the County's method was reasonably calculated to inform the persons whom the County reasonably believed owned the property. Hiring a company whose specialized business it is to conduct real estate title searches and then relying on the results of that company's search was a method reasonably calculated to identify the owner. So too was relying on the County's tax collector's records for the names of people who saw to the paying of the taxes on the property. Hence, sending notice by certified mail to Mrs. Glendinning via Mr. Andrew and publishing notice in the local newspaper were, in these circumstances, methods reasonably calculated to apprise interested parties of the pendency of the action. By mailing notice to Mrs. Glendinning and publishing notice in a local newspaper, the County fulfilled its minimum constitutional requirements under the Due Process Clause.

Our court finds that the County's means were unreasonable under these circumstances. Specifically, our court holds "that the means resorted to here to give notice to prospective purchasers did not, in the circumstances of this case, satisfy the requirements of due process." See supra at 663–64. We dissent from this holding on two grounds.

First, we believe the means used here were reasonable. Unreasonable means are those that are unlikely to fulfill their intended purpose, but here there was nothing wrong with the means: Conducting a title search and mailing notice to the revealed record owner was reasonably calculated to apprise all interested parties of the pendency of the action. The court's opinion holds that "[m]ailing notice to a deceased owner is manifestly defective." Supra at 664. It must be remembered that due process does not require a notice procedure which is perfect, i.e., one designed to positively reach every conceivable interested party. Only reasonable notice is constitutionally required. Here it was not the County's fault that notice was sent to the deceased Mrs. Glendinning rather than to her heirs. The Glendinning heirs had not filed their probate decree when the County hired the title company to perform its search.[2] Had the Glendinning heirs filed their decree promptly, the title search would have identified their ownership, the County would have notified the heirs directly, and the heirs could have taken steps to remedy the property's defects or to warn Mr. Kornblum about the nuisance and demolition orders. The County cannot be held at fault because the Glendinning heirs sat on their hands and failed to file the probate decree vesting them with title until after the County had sent its notice and had held its hearing, with the result being that their individual names would not be revealed by the County's title search.

Second, and more fundamentally, we believe that the court errs in assuming that unidentifiable and unknown, future potential purchasers who have absolutely no interest in the property at the time of the hearing are constitutionally entitled to notice. We believe that to have a constitutional right to notice, a party must have an interest at stake. See Mennonite, 462 U.S. at 798, 103 S.Ct. at 2711 (beginning its analysis by firmly establishing that the mortgagee had an interest in the property and then concluding: "Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale.") (emphasis added). In this case, the unknown, future potential pur-

---

**2.** Mrs. Glendinning died intestate on October 23, 1982. Over four years later, on January 8, 1987, the Saint Louis County Circuit Court, Probate Division, issued a decree stating the Glendinning heirs had fee simple interests in the property. The heirs had not yet filed this January 8 probate decree when First American Title prepared the title search for the County on March 24, 1987.

chaser at issue is Mr. Kornblum,[3] who purchased the property in February 1988, long after the formal condemnation proceedings had concluded. Since Mr. Kornblum had no interest of any kind in the property and was not even in the picture at the time of the condemnation proceedings, no notice was due him personally of the County's intention to demolish another's (the Glendinning heirs') property.

This constitutional interpretation follows from the basic principle that the due process right to notice exists as a protection of the right to contest pending state actions in a hearing; indeed, the right to a hearing would be an empty right without the right to notice. *See Memphis Light Gas & Water Div. v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30 (1976) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'"); *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657 (stating that reasonable notice apprises parties of the pendency of the hearing and affords them an opportunity to present their objections). In this case, however, our court creates a constitutional right to notice for an entire class of unknown, future potential purchasers who themselves do not yet even know that they may be interested in buying the property and who certainly have no legal interest in the property and thus no reason to contest state action at a hearing. This result turns our jurisprudence of procedural due process on its head. Moreover, it essentially expands the Fourteenth Amendment's guarantee that no governmental entity will "deprive any person of ... property, without due process of law" into a guarantee that all unknown, future purchasers have a constitutional right to receive record notice of all county nuisance abatement proceedings affecting everybody else's property. We respectfully disagree with this interpretation of the due process guarantee.

Even assuming, *arguendo*, as our court does, that Mr. Kornblum had a right to notice as a future purchaser, Mr. Kornblum's status as an "interested" or "affected" party at the time of the proceedings was, at the very best, that of an "unascertainable" party as described in *Mullane*. Thus, at the time of the proceedings, he was constitutionally entitled only to the published notice the County gave. *See Mullane*, 339 U.S. at 317–18, 70 S.Ct. at 658–59.

Our court next concludes that the six-month delay between the demolition hearing and the actual demolition "contributed significantly to the unreasonableness of the notice in this case." *Supra*, at 663. We cannot agree that the delay "created a foreseeable and appreciable risk [such] that [the County's] action would affect a set of interested parties different from those whose interests were affected when the house was declared a nuisance." *Supra*, at 664. The property had been vacant for over five years and was an observable safety hazard. The County had twice posted notices on the physical property, written to the record owner via Mr. Andrew, printed notices in the newspaper, and held a public hearing. After such numerous warnings and attempted contacts, the County appropriately concluded that no one was interested in the deteriorated house. Any licensed real estate broker whose business it is to speculate in dilapidated housing would certainly be aware of the potential for the razing of such structures by local government.

The County's conclusion rested on two reasonable assumptions. First, the county reasonably assumed that the record owner knew of the pending demolition. *Greene v. Lindsey*, 456 U.S. 444, 451, 102 S.Ct. 1874, 1879, 72 L.Ed.2d 249 (1982) ("It is, of course, reasonable to assume that a property owner will maintain superintendence of his property, and to presume that actions physically disturbing his holdings will come to his attention...."); *Mullane*, 339 U.S. at 316, 70 S.Ct. at 658 ("As phrased long ago by Chief Justice Marshall in *The Mary*, 9 Cranch 126, 144, 'It is the part of common prudence for all those who have any interest in [a thing], to guard that interest by persons who are in a situation to protect it.'") (alterations in original). In short, the County, by its mailed

---

**3.** Mr. Kornblum is a licensed real estate broker engaged in the business of real estate specula-

tion, buying dwellings in a state of disrepair, then renovating and selling them at a profit.

668

notice to the record owner, its publication in the local newspaper, and its double posting on the property, reasonably assumed the record owner—by the owner's own superintendence or through the owner's agent who was paying the property taxes—was aware of the pending action.

Second, the County could reasonably assume that the owner would pass the owner's knowledge of the pending demolition on to a buyer, selling the property either on a warranty deed subject to the impending proceedings or by a quitclaim deed, with no warranty of marketable title. *See Greene,* 456 U.S. at 451, 102 S.Ct. at 1879 (stating that we must assess the constitutional sufficiency of notice "in the light of its practical application to the affairs of men as they are *ordinarily conducted.*") (emphasis added and citation omitted). The fact that Mr. Kornblum received the property by warranty deed without knowledge of the condemnation may raise an issue of state real property law between him and the Glendinning heirs. It does not affect the question of whether the County complied with its constitutional obligations in the process of its condemnation proceedings. Nor does it implicate a continuing duty to conduct frequent title searches and give new notice to each subsequent record owner. *See generally Mullane,* 339 U.S. at 318, 70 S.Ct. at 659 ("The expense of keeping informed from day to day of substitutions among even current income beneficiaries ..., to say nothing of the far greater number of contingent beneficiaries, would impose a severe burden....").

Because the County had the constitutional obligation to give notice conforming to the requirements of the Due Process Clause, the

actual content of the County's ordinance is not necessary to our constitutional inquiry. We must look at what actions the County took, not what local law may or may not have been followed. We may or may not all agree that the county should be held accountable in some way for not completing the extra procedures required by its ordinance, but any inaction by the County does not rise to the level of a constitutional tort because that portion of the ordinance with which the County did not comply falls outside the scope of the notice procedures explicitly guaranteed under the Constitution. *See Reese v. Kennedy,* 865 F.2d 186, 187 (8th Cir.1989) ("To the extent that Reese argues that appellees did not follow existing eviction procedures ... a due process deprivation does not occur because of an unauthorized failure of state officials to follow established state procedures."); *Myers v. Morris,* 810 F.2d 1437, 1469 (8th Cir.) ("At most, the statute established guidelines to be followed as a matter of state law and neither confers nor embodies any constitutionally-protected right asserted by the plaintiffs."), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987); *Gregory v. City of Rogers, Ark.,* 974 F.2d 1006, 1009 (8th Cir.1992) ("Many harms, though caused by a state actor, do not fall within the scope of section 1983, for section 1983 does not turn the Fourteenth Amendment into a font of tort law that supersedes the tort systems already available under individual state laws.").[4] Thus, even if we agree that performing another title search within the six-month delay between the demolition hearing and the demolition would have been an ideal procedural safeguard, the Constitution imposes no such ideal requirement.[5]

4. *See generally* Charles F. Abernathy, "Section 1983 and Constitutional Torts," 77 *Georgetown L.J.* 1485 (1989) ("In the companion cases of *Daniels v. Williams* and *Davidson v. Cannon,* [474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677], the Court decided that neither the procedural nor substantive due process aspects of the fourteenth amendment made negligent official conduct actionable under § 1983" (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 334, and n. 3, 106 S.Ct. 662, 666–67, and n. 3, 88 L.Ed.2d 662 (1986))).

5. Ironically, the question of the timing of notice has historically been challenged from exactly the opposite standpoint, that is, on whether the no-

tice was far enough in advance of the state action. *See, e.g., Anderson Nat'l Bank v. Luckett,* 321 U.S. 233, 245, 64 S.Ct. 599, 605–06, 88 L.Ed. 692 (1944) (finding notice of 6 weeks to be adequate time); *North Laramie Land Co. v. Hoffman,* 268 U.S. 276, 283–84, 45 S.Ct. 491, 494–95, 69 L.Ed. 953 (1925) (finding notice of 30 days to be adequate); *see also In re Gault,* 387 U.S. 1, 33–34, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527 (1967) ("Notice, to comply with due process requirements, must be given sufficiently in advance of...."). Our court now finds that the notice was not close enough in proximity to the state action. Consequently, a state is now saddled with the dual concerns of giving notice not only far enough in advance of the state action,

The focus of our inquiry should be on whether what the County did do meets the constitutional due process requirement, not on whether what the County failed to do violates its ordinance. And it is at this point where we have a fundamental difficulty with our court's opinion. The court expressly declines to reach the question of whether the Constitution requires record notice provisions like those contained in the ordinance at issue, *supra* at 663, but nonetheless holds that the County's failure to follow such record notice provisions in its ordinance constitutes a violation of Mr. Kornblum's constitutional rights. We are compelled to ask, respectfully, how can that be? How can a violation of an ordinance's notice provision be declared a constitutional deprivation without first deciding whether the notice provision at issue was constitutionally required?

In order to sustain the court's position, its opinion must be read to create one or more new constitutional duties: (1) a duty to give record notice for the benefit of parties who have no legally protected property interest; or (2) a continuing duty on the part of the County to keep itself informed of all changes in ownership and to give new notice to each new owner; or (3) a duty to give a separate, second notice to any new owners just before the wrecking crew goes to work. We believe that each one of these new duties would be an unwarranted extension of a state's obligation under the Due Process Clause.

In short, the County did not take an important but self-imposed step before it demolished the house Mr. Kornblum had purchased from the Glendinning heirs. Failing to take that step in the County's ordinance did not violate Mr. Kornblum's constitutional right to procedural due process. Although the County's mistake involved state actors, real property, and oversight of a provision in a local ordinance, this combination did not result in a section 1983 claim under the Due Process Clause. To hold otherwise is to overstep the well-defined boundaries of due

process jurisprudence and to invite future litigants to file state law claims as section 1983 claims, thereby encouraging a veritable onslaught of section 1983 actions. Mr. Kornblum can litigate his negligence claims (or for that matter any claim he may have against the Glendinning heirs for failure to convey marketable title) in state court, but in our view he has no cognizable section 1983 claim because the County's mistake was not a constitutional violation. We therefore respectfully dissent.

but also close enough to the time of the intended action. If the state must give a second notice just before the state action, must it also have a second hearing immediately prior to the action? As noted above, the notice requirement is merely a logical precursor to the constitutional right to a hearing. *See supra*, at 668. Further, how much time in advance is a "long time" or a "considerable time" such that the Constitution will mandate subsequent notice and a second hearing? *See supra*, at 664.