[Civ. No. 46053. Second Dist., Div. Two. Oct. 20, 1975.]

LEONARD FRIEDMAN, Plaintiff and Respondent, v.
CITY OF LOS ANGELES, Defendant and Appellant.

**COUNSEL**

Burt Pines, City Attorney, John T. Neville, Assistant Attorney General, and Philip Shiner, Deputy City Attorney, for Defendant and Appellant.

Granet, Brent, Silberstein & Wiener and Nicholas Granet for Plaintiff and Respondent.

**OPINION**

**FLEMING, Acting P. J.**—Defendant City of Los Angeles appeals the judgment in favor of plaintiff Leonard Friedman in an action for damages for the wrongful demolition of a building.

### FACTS

In October 1967 fire damaged a four-unit apartment building owned by Willie and Corinne Powell at 227-229 East Adams Blvd., Los Angeles. In November 1967 the city department of building and safety ordered

the building repaired or demolished. A December 1967 title search of county records on behalf of the city showed the Powells as owners of the property. In July 1968 the city gave notice to the Powells they had until August 26 to comply with the city's order; after that date they would forfeit the right to comply, and the city would solicit bids to demolish the building.[1] The Powells applied to the board of building and safety commissioners for an indefinite extension of time to comply, but on November 18 the board denied the Powells' application and requested the department of building and safety "to proceed with demolition procedures against the building."

On November 22, in a recorded transaction the Powells sold the property to Homeside Construction Company. On November 29 Homeside, as owner, was issued a permit to repair the building by the building bureau of the department of building and safety. The permit required Homeside to begin repairs within six months and complete them within one year. Contrary to the usual procedure within the department of building and safety, the building bureau did not forward a copy of the building permit to the conservation bureau, the office that had authority over the demolition of buildings.

On December 20 in a recorded transaction Homeside sold the property to Friedman. Friedman testified he knew nothing about the impending demolition. He planned to rehabilitate the property in accordance with the building permit and sell it at a profit. He valued the land at $4,500 and the unrepaired building at $12,000.

Without notice to Homeside or Friedman, on 23 January 1969 the city superintendent of buildings adopted specifications for the demolition of the building. Bids were solicited on February 20, a contract was signed on March 31, and on April 29 the building was demolished. County tax

---

[1] Los Angeles Municipal Code section 96.119.1 provides:

"(a) Whenever the Department has undertaken action to sell, repair, or demolish any building or structure under the provisions of this Article upon failure of the owner or other interested party to comply with an order therefor, and has caused the solicitation of bids to accomplish said work, the owner or other person having charge or control over said building or structure shall be deemed to have forfeited all further rights and privileges to do such work and is thereafter prohibited from doing any such work on said building or structure, except as the Department may otherwise allow.

"(b) In the event that the owner or other person having charge or control of the building or structure proceeds to perform the work of repairing or demolishing a building or structure without a permit and in violation of Subsection (a) hereof, the Department shall charge the person who caused said work to be performed the sum of $50 as partial reimbursement to the City for those expenses incurred in the preparation of the bid and administering the invitation to bid."

assessment rolls still listed the Powells as owners of the property on 1 May 1969.[2]

The trial court found the city possessed constructive notice of Friedman's ownership prior to demolition, the city was negligent in failing to notify Friedman or Homeside of the impending demolition, and the city was negligent in demolishing the building during the six-month period of repair under Homeside's building permit. The court assessed Friedman's damages at $12,900 plus costs and interest from the date of the complaint.

## DISCUSSION

The city contends it is immune from liability for erroneous or negligent issuance of the building permit. (See Gov. Code, § 818.4.) We assume the correctness of this contention. (*Burns* v. *City Council,* 31 Cal.App.3d 999, 1003 [107 Cal.Rptr. 787].) But the basis for the city's liability is more comprehensive than any error or negligence connected with its issuance of the permit.[3] Under its police power to protect public health and safety a city may destroy private property without liability to the property owner, but when it does this it must afford the owner due process of law. (7 McQuillin, Municipal Corporations (3d ed.) § 24.561, p. 591.) An unlawful exercise of the police power in the destruction of private property gives rise to a cause of action for damages. (*Leppo* v. *City of Petaluma,* 20 Cal.App.3d 711, 716 [97 Cal.Rptr. 840].)

In the absence of an absolute emergency, essential elements of due process of law include notice and opportunity to be heard. (*Thain* v. *City of Palo Alto,* 207 Cal.App.2d 173, 189-192 [24 Cal.Rptr. 515].) The city gave adequate notice and opportunity for hearing to the Powells. But for five months prior to the destruction of the building someone other than the Powells owned the property. The city made no attempt to investigate current ownership of the property at the time of demolition or give notice to potentially new owners. We think Friedman was entitled to notice of the prospective demolition.

The city argues it met its own ordinance requirement for notification in that it notified the owners listed on the tax rolls (see fn. 2, *ante*), and

[2]Los Angeles Municipal Code section 91.0103(o) provides in part that repair or demolish orders "shall be served upon the owner as shown in the last equalized assessment roll or upon the person in charge or control of the site."

[3]For a comparable comedy of departmental errors see *Aronoff* v. *City of St. Louis* (Mo. 1959) 327 S.W.2d 171.

the tax rolls continued to list the same persons as owners throughout the period of demolition. However, the procedure set out in the city's ordinance fails to meet the standard of due process. We agree that at some point short of the moment of demolition the city is justified in relying on notice to the then owners of record and thereafter proceeding to demolish. But reliance on notice to owners of record as determined by a title search 16 months earlier is not warranted, and such notice does not qualify as valid notice to the owner of a pending demolition. Patently, the tax rolls are not an accurate and timely source of information for determining the ownership of property scheduled to be demolished. The city's plodding demolition procedures provide no excuse for its failure to make a timely title search, and the city cannot reasonably rely on former property owners to give notice of prospective demolition to present owners on the city's behalf. A simple alternative to periodic title search by the city would be recordation of its intention to demolish. (See *Whiting* v. *City of Pasadena,* 255 Cal.App.2d 372 [63 Cal.Rptr. 174].) A new owner would then have notice of the city's projected action and could take appropriate steps to avoid loss. Had a proper notice been recorded, Friedman might never have purchased the property or might have acted promptly to repair the building and forestall the need for its demolition.

■  The city also contends the trial court erred in awarding prejudgment interest. (See *Abrams* v. *Motter,* 3 Cal.App.3d 828, 841-846 [83 Cal.Rptr. 855].) We do not agree. Civil Code section 3287, subdivision (a), provides: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ." Damages for the value of destroyed property are capable of being made certain, (*Esgro Central, Inc.* v. *General Ins. Co.,* 20 Cal.App.3d 1054, 1060 [98 Cal.Rptr. 153]; *Leaf* v. *Phil Rauch, Inc.,* 47 Cal.App.3d 371, 375 [120 Cal.Rptr. 749]), and here Friedman testified to the value of the destroyed property. Since his testimony was uncontradicted, the damages could be considered reasonably certain, and the court could allow interest from the date of the complaint.

The judgment is affirmed.

Compton, J., and Beach, J., concurred.