[No. B173977. Second Dist., Div. Three. Jan. 30, 2006.]

D & M FINANCIAL CORPORATION, Plaintiff and Respondent, v. CITY OF LONG BEACH, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part V.B. and C.

COUNSEL

Robert E. Shannon, City Attorney, and Randall C. Fudge, Deputy City Attorney, for Defendant and Appellant.

Dapeer, Rosenblit & Litvak, William Litvak and Alexander Litvak for Plaintiff and Respondent.

OPINION

KITCHING, J.—

## I. INTRODUCTION

The City of Long Beach appeals from a judgment for inverse condemnation in favor of D & M Financial Corporation, which held a security interest in real property on which the City of Long Beach demolished an alleged substandard apartment building. The main issue in this appeal is whether, before demolishing a structure which it had declared to be substandard, the City of Long Beach satisfied its obligation to provide due process of law to D & M Financial Corporation. We reject the claim by the City of Long Beach that recordation of a "Declaration of Substandard Property" placed D & M

Financial Corporation on notice that a building on its real property security would be demolished. We further conclude that the City of Long Beach failed to comply with its own practice of updating title reports to determine current ownership of property declared to be substandard. In addition, even after it had actual notice of the security interest held by D & M Financial Corporation, the City of Long Beach failed to comply with its ordinances requiring notice to mortgagees of property declared to be substandard. The City of Long Beach also failed to give D & M Financial Corporation the opportunity to repair defects at the property. Therefore the City of Long Beach violated the due process rights of D & M Financial Corporation. We affirm the judgment in favor of D & M Financial Corporation.

## II. PROCEDURAL HISTORY

In the operative complaint, a second amended complaint filed on September 23, 2002, plaintiff D & M Financial Corporation (plaintiff or D & M Financial) alleged that without notice to D & M Financial, defendant City of Long Beach (the City) demolished an apartment building on real property in which D & M Financial held a trust deed to secure a promissory note executed by Rahim Pashmaki, who acquired the property on February 7, 2001. The complaint alleged causes of action for deprivation of due process in violation of section 1983 of title 42 of the United States Code and for inverse condemnation.

The court tried the matter pursuant to the parties' stipulated statement of facts, other evidence by declaration and deposition, and trial exhibits.

The trial court rendered judgment for D & M Financial, which was to recover $273,500 in damages from the City, plus attorney fees and costs. The City filed a timely notice of appeal from the judgment.

## III. FACTS

The City demolished a four-unit apartment building at 1462–1468 Henderson Avenue in Long Beach on August 14, 2001. The history of this demolition is as follows.

In May 2000, Loren Patten, a senior combination building inspector for the City of Long Beach, inspected the building at 1462–1468 Henderson Avenue and on June 30, 2000, issued a declaration of substandard building. On July 6, 2000, Patten sent a letter titled "Notice of Substandard Building" to the then owner and served copies on interested parties, including the then trust deed holder. On July 17, 2000, a "Declaration of Substandard Property" for the Henderson Avenue property was recorded with the Los Angeles County

Recorder pursuant to Long Beach Municipal Code section 18.20.110 et seq., relating to substandard buildings.

Patten estimated it would cost $20,000 to bring the building into compliance with applicable codes and to repair deficiencies identified in the Declaration of Substandard Property.

On November 10, 2000, the City of Long Beach "Findings of the Building Official" found the apartment building at 1462–1468 Henderson Avenue to be substandard and a public nuisance. The building, constructed in 1924, had been vacant since before the July 6, 2000, Notification of Substandard Building. An attachment identified 38 defects needing repair or replacement, and found the structure to be a safety hazard.

Also on November 10, 2000, the City sent a "Notice of Hearing" for a hearing on November 20, 2000, to the property owner, 777 Cyber, Inc., to the then trust deed holder, and to interested parties.

At a November 20, 2000, hearing, the Board of Examiners, Appeals and Condemnation (BEAC) adopted the Building Official's Findings as the BEAC's findings. On November 22, 2000, a "Notice of Board Determination" was sent to 777 Cyber, Inc. and to the then trust deed holder. The notice reflected the BEAC's determination that the apartment building on the Henderson Avenue property was substandard and a public nuisance, and its order that the owner demolish or rehabilitate the structure by December 20, 2000. This notice was not recorded.

By December 13, 2000, Aztec Financial had acquired the Henderson Avenue property through foreclosure. On that date Aztec Financial requested an extension of time to complete repairs on the Henderson Avenue property. A letter from Aztec Financial stated that it would obtain permits on December 15 and would start construction on December 18, 2000. On December 15, 2000, the City issued permits for repairs identified in the Building Official's Findings.

On January 8, 2001, the BEAC approved a request for a time extension, with rough inspections to be completed by February 8, 2001, and an additional 30 days to March 8, 2001, for completion of the project.

During the period from February 8 to August 10, 2001, the City's records indicated that seven different site inspections showed insufficient work to repair the Henderson Avenue property.

By a February 2, 2001, grant deed, 1462–1468 Henderson Avenue was sold to Rahim Pashmaki. Daaz Financial Services, Inc., made a $247,500 loan to Pashmaki, secured by a trust deed recorded February 15, 2001, in the Los Angeles County Recorder's Office. Also recorded on February 15, 2001, was the assignment of the Daaz Financial Services trust deed to D & M Financial.

City policy is to issue a 10-day notice of intent to demolish, and to mail the 10-day notice of intent to demolish to all persons listed in the City's files, the title report, and the lot book update. It was the City's practice to obtain a title report/lot book update before sending a 10-day notice of intent to demolish. The City did not obtain a lot book update before sending out the 10-day notice regarding the Henderson Avenue property. On February 26, 2001, the City sent Aztec Financial a 10-day notice of intent to demolish, but sent no copy to D & M Financial.

Dale Wiersma, principal building inspector of the City of Long Beach Department of Planning and Building, acknowledged that he was told in April of 2001 that there had been a change of title and that D & M Financial held a trust deed on the Henderson Avenue property. On April 6, 2001, the City obtained an updated title report, showing that D & M Financial was a beneficiary under a trust deed recorded on February 15, 2001.

On April 10, 2001, Wiersma sent a letter to Pashmaki stating that pursuant to a February 26, 2001, "Notice of Intent to Demolish," the City was preparing a contract to demolish structures at 1462–1468 Henderson Avenue, and requested Pashmaki's approval for unrestricted access to the properties on April 16, 2001. On May 15, 2001, the City obtained a warrant to inspect the Henderson Avenue apartment building and garage foundation. On May 21, 2001, the City obtained a warrant to inspect the premises for asbestos for future demolition purposes. On May 22, 2001, the City sent Pashmaki a "Notice to Clean Premises." On June 1, 2001, the City sent Pashmaki a "Notice to Pay Public Nuisance Abatement Levy." On June 19 and July 2, 2001, the City sent a notice of lien for costs to abate a nuisance at the Henderson Avenue property to the Office of the Los Angeles County Recorder. The City sent no copies of these documents to D & M Financial.

On August 7 and 10, 2001, the City obtained warrants to inspect the Henderson Avenue property for the purpose of demolition. The City sent a copy of the August 7, 2001, warrant to D & M Financial by certified mail. It was delivered to D & M on August 13, 2001.

It is the City's policy to issue a 48-hour notice of intent to demolish before demolishing a building. On Friday, August 10, 2001, the City mailed a "48-Hour Notice of Intent to Demolish" to Pashmaki, and sent a copy to D & M Financial at its address in Belleville, New Jersey. Wiersma testified that he did not take into consideration that he was sending the 48-hour notice over a weekend, or that it was being sent to a party in New Jersey. D & M Financial received the "48-Hour Notice of Intent to Demolish" on Monday, August 13, 2001. On that date DeSantis of D & M Financial spoke to Wiersma.

From the time it acquired its interest in the Henderson Avenue property on February 15, 2001, until it received the 48-hour notice and the inspection warrant on August 13, 2001, D & M Financial received no notice from the City that the City had commenced any proceeding to demolish the property.

DeSantis contacted Wiersma several times on August 13 and 14, 2001. Wiersma had authority to stop demolition. The City began demolition of structures at the property on August 14, 2001, and on that date informed D & M Financial that demolition had already commenced. Cleanup of the site was concluded by August 28, 2001.

On September 21, 2001, the City sent Pashmaki a demand for payment of $11,615.20 costs for demolition and enforcement, and recorded a notice of lien for $11,675.20.

On July 29, 2003, pursuant to the deed of trust recorded on February 15, 2001, the trustee under the deed of trust sold the Henderson Avenue property to D & M Financial for $70,500 cash.

The parties agreed and stipulated that if the City were found to be liable, damages suffered by D & M Financial for demolition of the building would be calculated as (1) $330,000 for the value of the property had demolition of improvements not taken place, and (2) $70,000 as the value of the property after demolition of improvements. Thus damages awarded to plaintiff would be calculated as $330,000 less the $70,000 residual value, for a total of $260,000. D & M Financial would also be entitled to removal of the City's $11,500 lien on the property, and if the lien was not removed within 10 days of entry of the court's order for judgment, $13,500 would be added for a total

judgment of $273,500 if the court ordered judgment in favor of D & M Financial. If the City were found liable, D & M Financial would also be entitled to recover its costs and attorney fees upon entry of the judgment.

As stated, the trial court entered judgment for D & M Financial in the amount of $273,500, plus attorney fees and costs.

## IV. ISSUE

The City's primary argument on appeal is that the judgment erroneously imposes a notice requirement beyond that imposed by the Fourteenth Amendment of the United States Constitution.

## V. DISCUSSION

A. *Before Demolishing the Structure, the City of Long Beach Failed to Provide Due Process to D & M Financial*

1. *Due Process Requirements for Demolition of Substandard Property*

■ "Under its police power to protect public health and safety a city may destroy private property without liability to the property owner, but when it does this it must afford the owner due process of law." (*Friedman v. City of Los Angeles* (1975) 52 Cal.App.3d 317, 321 [125 Cal.Rptr. 93].) When a city threatens to demolish structures, due process requires that the city provide the property owner and other interested parties with notice, with the opportunity to be heard, and with the opportunity to correct or repair the defect before demolition.

Before taking an action which will affect a property interest protected by the due process clause of the Fourteenth Amendment, a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 70 S.Ct. 652].) Constitutionally sufficient notice is "such as one desirous of actually informing the [interested parties] might reasonably adopt to accomplish it." (*Id.* at p. 315.) "The notice must be of such nature as reasonably to convey the required information[.]" (*Id.* at p. 314.)

Except in emergencies, due process of law also requires an opportunity to be heard. (*Friedman v. City of Los Angeles, supra*, 52 Cal.App.3d at p. 321.) Procedural due process, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and by article I, section 7 of the California Constitution, exists "to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner." (*Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1072 [114 Cal.Rptr.2d 798]; see *United States v. James Daniel Good Real Property* (1993) 510 U.S. 43, 49-52 [126 L.Ed.2d 490, 114 S.Ct. 492].)

■ "The right to prior notice and a hearing is central to the Constitution's command of due process. 'The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property[.]' " (*United States v. James Daniel Good Real Property, supra*, 510 U.S. at p. 53.)

Finally, when a city threatens demolition of structures, due process also requires the city to give a property owner the opportunity to correct defects or repair a structure constituting a nuisance before demolition. (*Hawthorne Savings & Loan Assn. v. City of Signal Hill* (1993) 19 Cal.App.4th 148, 158–159 [23 Cal.Rptr.2d 272]; see *Duffy v. City of Long Beach* (1988) 201 Cal.App.3d 1352, 1358 [247 Cal.Rptr. 715].)

### 2. *D & M Financial Had a Sufficient Ownership Interest to Bring an Inverse Condemnation Action*

The authorities speak of due process which must be accorded to owners of property and to "interested parties." Between its acquisition of the trust deed and note on February 15, 2001, and the demolition of the building at the Henderson Avenue property, D & M Financial held the note and trust deed and had a security interest in that property. The owner of the Henderson Avenue property during this period was not joined as a party to this action.[1] We conclude that the circumstances of this case made trust deed holder D & M Financial an "interested party" with standing to bring an inverse condemnation action without joining the mortgagors.

■ "Article I, section 19, of the California Constitution provides that property may be taken or damaged for public use only if just compensation is paid to the owner. That provision authorizes not only an eminent domain proceeding instituted by a public entity to acquire private property, but also an

---

[1] As stated earlier, D & M Financial became the owner of 1462–1468 Henderson Avenue through foreclosure on July 29, 2003.

inverse condemnation action initiated by a landowner to obtain compensation for a claimed taking or damaging of his or her property." (*Barthelemy v. Orange County Flood Control Dist.* (1998) 65 Cal.App.4th 558, 563–564 [76 Cal.Rptr.2d 575].) An inverse condemnation action is the equivalent of an eminent domain proceeding, except that the plaintiff is the property owner, not the condemnor. Equivalent principles govern the parties' rights in both actions. (*Id.* at p. 564; *Breidert v. Southern Pac. Co.* (1964) 61 Cal.2d 659, 663, fn. 1 [39 Cal.Rptr. 903, 394 P.2d 719].)

■ To be constitutionally entitled to compensation for inverse condemnation, a plaintiff must show it owned a property interest taken by the state. Parties with interests sufficient to bring an inverse condemnation action include holders of fee interests, easements, rights-of-way, and building restrictions (*County of San Diego v. Miller* (1975) 13 Cal.3d 684, 687–688 [19 Cal.Rptr. 491, 532 P.2d 139]), a holder of an unexercised option to purchase property (*id.* at p. 693), a mortgagor whose interest has been foreclosed, the executor of a property owner's estate in which the decedent held an interest with a spouse, and an insurer-subrogee seeking recovery in the name of the insurer or of its insured (*McMahan's of Santa Monica v. City of Santa Monica* (1983) 146 Cal.App.3d 683, 690–691 [194 Cal.Rptr. 582]).

The entitlement to due process compensation does not turn on strict categories of estates in real property or contractual rights. " '[T]he right to compensation is to be determined by whether the condemnation has deprived the claimant of a valuable right rather than by whether his right can technically be called an "estate" or "interest" in the land.' " (*County of San Diego v. Miller, supra,* 13 Cal.3d at p. 691, italics omitted.)

■ We find that the beneficiary of a deed of trust on property has a sufficient ownership interest to be entitled to just compensation in inverse condemnation. Such a party has a "compensable interest" in an eminent domain proceeding as to the property. (*Carson Redevelopment Agency v. Adam* (1982) 136 Cal.App.3d 608, 613 [186 Cal.Rptr. 615].)

Ordinarily the "compensable interest" of the beneficiary of a trust deed to recover an inverse condemnation award derives from the owner/mortgagor's recovery. When a portion of the property constituting the security is taken by eminent domain, the trust deed holder's remedy is to participate in an apportionment proceeding to recover an amount equivalent to the impairment

of the security interest. (*People ex rel. Dept. of Transportation v. Redwood Baseline, Ltd.* (1978) 84 Cal.App.3d 662, 670–671, & 682, fn. 12 [149 Cal.Rptr. 11], citing Code Civ. Proc., §§ 1260.220, 1268.710.) However, an agreement between parties to the trust deed creating the security interest can permit the trust deed holder to recover an inverse condemnation award directly. (*Redwood Baseline,* at pp. 670–671; see also *Carson Redevelopment Agency v. Adam, supra,* 136 Cal.App.3d at p. 613.)

The mortgagor and D & M Financial had such an agreement. The trust deed creating the security interest of D & M Financial in Pashmaki's Henderson Avenue property defined "Miscellaneous Proceeds" as "any compensation, settlement, award of damages, or proceeds paid by any third party . . . for: . . . (ii) condemnation or other taking of all or any part of the Property[.]" That trust deed required that such miscellaneous proceeds from a partial taking of the secured property be applied to reduce the debt secured by the trust deed.[2] Such a provision is valid and enforceable. (*People ex rel. Dept. of Transportation v. Redwood Basline, Ltd., supra,* 84 Cal.App.3d at p. 671, fn. 7.)

According to the stipulated facts, the value of the Henderson Avenue property would have been $330,000 had demolition of improvements not taken place. The security instrument and trust deed recorded February 15, 2001, which was assigned to D & M Financial, secured a promissory note signed by Rahim Pashmaki in the amount of $247,500. Thus the quoted trust deed clause regarding disposition of miscellaneous proceeds from an inverse condemnation involving a partial taking of the Henderson Avenue property applies, because "the fair market value of the Property immediately before the partial taking, destruction, or loss in value [was] equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value[.]" This assignment of a right to recover an inverse condemnation judgment gives D & M Financial a sufficient ownership interest in the Henderson Avenue property to bring the inverse condemnation action.

---

[2] The relevant clause in the trust deed states: "In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower."

As we subsequently determine, the City's own ordinances required it to serve mortgagees with notices and orders provided for in the chapter governing administration and enforcement of housing. (Long Beach Mun. Code, § 18.20.260.) This ordinance recognizes that a mortgagee has a sufficient property interest to entitle the property owner to due process when the City takes actions which affect the mortgagee's property right. It supports a mortgagee's right to bring an inverse condemnation suit when those actions constitute a "taking" of mortgaged property without due process of law.

3. *The City Did Not Give Notice to D & M Financial of Its Intention to Demolish the Substandard Building*

One fundamental requirement of due process is the necessity of giving notice of demolition of structures to parties with an interest in the property. At numerous times as it proceeded toward demolition, the City failed to provide this notice.

a. *The Recorded Declaration of Substandard Property Did Not Give Notice of the City's Intention to Demolish the Substandard Building*

On July 17, 2000, the City recorded a Declaration of Substandard Property for the Henderson Avenue property with the Los Angeles County Recorder. It stated: "Notice is hereby given that pursuant to the provisions of Section 18.20.110 et seq. of the Long Beach Municipal Code, the property described below has been inspected and found to be substandard, as defined in Section 18.08.200 of the above ordinance and the owner has been or will be so notified. The owner is responsible for any costs, including incidental enforcement expenses, incurred by the City to correct the substandard condition. [¶] This document will be terminated only when the Superintendent of Building and Safety of the City of Long Beach finds that the public nuisance has been abated and either that such abatement has been accomplished at no cost to the City or that any such cost[s] have been repaid to the City, or that such costs have been placed upon the tax rolls as a special assessment. Detailed information may be obtained by contacting the Housing Section, Building and Safety Bureau."

The City contends that this recorded Declaration of Substandard Property put all present and future interested parties on notice that the building could be demolished. The City argues that this declaration satisfied any due process requirements. We disagree.

This Declaration of Substandard Property makes no reference to demolition of structures, and gives no express notice that demolition of structures will occur or is even contemplated. It states only that the property has been found to be substandard, the owner has been or will be so notified, and that the owner is responsible for the City's costs incurred to correct the substandard condition. The declaration also advises that it will be terminated only when the City finds that the public nuisance has been abated. It does not advise that demolition will occur if the public nuisance is not abated.

 One of the ordinances referred to in the declaration, Long Beach Municipal Code section 18.20.110, states: "Whenever the building official determines by inspection that an existing building is substandard, or constitutes a nuisance, he shall institute proceedings to cause the *repair, rehabilitation, vacation or demolition* of such building." (Italics added.) The City argues that by identifying Long Beach Municipal Code section 18.20.110, the recorded declaration placed D & M Financial, as a subsequent encumbrancer, on constructive notice of the possibility of demolition of the Henderson Avenue Property. Demolition, however, is only one of four possible outcomes of proceedings instituted after the building inspector determines that a building is substandard. In addition, Long Beach Municipal Code section 18.20.230 permits demolition only after a BEAC hearing at which persons claiming an interest in the building that is the subject of the hearing may appear and object, and a determination by the BEAC, with written findings, that total demolition is required.[3] Since it was issued and recorded *before* any BEAC determination, the Declaration of Substandard Property could not and did not give notice that the City would demolish the building at 1462–1468 Henderson Avenue. Thus it does not constitute recordation of an intention to demolish, which would have the effect of placing a prospective buyer on notice of the City's projected action. (See *Friedman v. City of Los Angeles, supra,* 52 Cal.App.3d at p. 322.)

---

[3] Long Beach Municipal Code section 18.20.230(A) states, in relevant part: "Following the filing by the building official of his findings in connection with the condemnation of a building as being substandard or as being a public nuisance, the building official shall notify the members of the board of examiners, appeals and condemnation of such filing and shall notify other interested persons of the time and place for a hearing before the board *for the purpose of passing upon the findings of the building official.*" (Italics added.) Subdivision (B) provides for service of notice of the time and place of the BEAC hearing to the owner and other parties owning an interest in the building. Subdivision (C) describes who may appear before the BEAC to object to the condemnation, and requires the BEAC to "take such evidence as may be necessary to determine whether the building or structure is substandard or is a public nuisance. Upon or after the conclusion of the hearing, the Board shall determine whether the building or structure is substandard or a nuisance and what alterations or repairs, if any, could be made in order to correct the substandard conditions or to abate the nuisance, *or whether the total demolition thereof is required*[.]" (Italics added.)

We reject the notion that recordation of the Declaration of Substandard Property put D & M Financial on inquiry or constructive notice that the City would demolish a structure at the Henderson Avenue property. We also reject the claim that recording the Declaration of Substandard Property satisfied due process.

> *b. The City Failed to Comply With the Requirement in Its Own Ordinances That It Give Notice of Demolition to Mortgagees Such as D & M Financial*

The Long Beach Municipal Code section 18.20.260(A) states, in relevant part: "All notices and orders provided for by this Chapter shall be in writing, shall state in general terms wherein the building or structure is unsafe or dangerous, or in what manner it is substandard, or in what manner it constitutes a public nuisance, and the minimum requirements for its correction, or total costs that will be charged to the owner of the property. *Service of such order shall be upon the owner* thereof or upon the person causing or permitting the condition to exist, or the person having the custody, control, maintenance, occupancy, use or management of the building, *and upon any lessee or mortgagee thereof* if shown on the official records of the County, by delivering the same to either of said persons or their agents in charge of the building." (Italics added.) Chapter 18.20 provides for such notices in at least eight situations.[4]

---

[4] Notices provided for by chapter 18.20 of the Long Beach Municipal Code include:

a. Notice of substandard building by the building official specifying inadequacies and hazards to be corrected (Long Beach Mun. Code, § 18.20.120).

b. Notice of posting and a copy of a notice of substandard building posted on a substandard building (Long Beach Mun. Code, § 18.20.160).

c. After the building official files findings in connection with a condemnation of a building as substandard or as being a public nuisance, notice of the time and place of a hearing before the BEAC must be given by the secretary of the board (Long Beach Mun. Code, § 18.20.230(A) & (B)).

d. After the hearing, a copy of the BEAC's written findings of its determination must be served on the same persons previously served with notice of the BEAC hearing (Long Beach Mun. Code, § 18.20.230(D)).

e. Notice of a determination by the city council in any appeal filed from the BEAC order concerning correction of substandard conditions or abatement of a nuisance (Long Beach Mun. Code, § 18.20.240(B)).

f. When a notice of a substandard building, or that a building constitutes a public nuisance, is posed at the property, within five days an additional copy of such notices is to be served on the owner of the building, or of any interest therein, including lessees and mortgagees (Long Beach Mun. Code, § 18.20.260(C)).

g. Notices relating to abatement charges (Long Beach Mun. Code, §§ 18.20.280 & 18.20.290).

h. Notice to secure structure (Long Beach Mun. Code, § 18.20.370).

■ This ordinance codifies the constitutional due process principle that the City must give notice (1) reasonably calculated under all circumstances to apprise interested parties of the City's action, and (2) in a manner which someone who desired to give actual notice to the interested party might reasonably adopt to accomplish such actual notice. (*Mullane v. Central Hanover Tr. Co., supra,* 339 U.S. at pp. 314–315.)

Thus the City's own ordinance requires express notice to mortgagees of orders and notices which affect buildings or structures found to be unsafe, dangerous, or substandard. The City failed to comply with those requirements, even after it had actual notice of the change of ownership and actual notice that D & M Financial held a security interest in the Henderson Avenue property.

 c. *The City Violated Its Own Procedures When It Failed to Obtain an Updated Title Report*

Although it was the City's practice to obtain a title report/lot book update before sending a 10-day notice of intent to demolish, the City did not obtain a lot book update before sending the 10-day notice regarding the Henderson Avenue property. Thus, for example, on February 26, 2001, the City sent a 10-day notice of intent to demolish to Aztec Financial, but sent no copy to D & M Financial.

■ A city cannot rely on notice to prior owners of record as determined by an out-of-date title search, and must make a timely title search to determine current ownership of property. (*Friedman v. City of Los Angeles, supra,* 52 Cal.App.3d at p. 322.) In *Friedman,* city ordinances required only that the city give notice of impending demolition to owners listed on tax rolls, which did not provide accurate and timely information. Otherwise the city made no attempt to investigate current ownership of the property at the time of demolition, and relied instead on a title search made 16 months earlier. During that period ownership had changed twice. Thus for five months before demolition of a building, the property owner was someone other than the owner listed on the tax rolls. The city's failure to investigate current ownership of the property or to give notice to a new owner violated that new owner's due process rights. (*Friedman v. City of Los Angeles, supra,* 52 Cal.App.3d at p. 321.) The city in *Friedman* also failed to record its intention to demolish, which again gave no notice to a prospective purchaser and new owner. (*Id.* at p. 322.)

The City of Long Beach failed to obtain an updated title report when it sent its notice of demolition, and thus sent no notice to D & M Financial. It had recorded no intention to demolish as of the date D & M Financial

acquired its security interest in the Henderson Avenue property. As in *Friedman*, these omissions violated the due process rights of D & M Financial.

### d. Four Months Before Demolition, the City Had Actual Notice of the Interest of D & M Financial in the Henderson Avenue Property

In April 2001, the City had actual notice of D & M Financial and its interest in the Henderson Avenue property. Dale Wiersma, principal building inspector of the City of Long Beach Department of Planning and Building, acknowledged he was told in April of 2001 that there had been a change of title and that D & M Financial was a trust deed holder. On April 6, 2001, the City obtained an updated title report, which showed that D & M Financial was a beneficiary under a trust deed recorded on February 15, 2001.

The City sent a letter to Pashmaki on April 10, 2001, regarding preparation of a contract for demolition, obtained warrants to inspect on May 15 and May 21, 2001, sent Pashmaki a notice to clean premises on May 22, 2001, a notice requesting payment of a public nuisance abatement levy on June 2, 2001, and a notice of lien for recordation with Los Angeles County on June 18 and July 2, 2001. Even though the City now had actual notice of D & M Financial and its secured interest in the Henderson Avenue property, it sent no notice of any of these documents to D & M Financial.

The City sent no notice to D & M Financial until it sent a copy of a warrant to inspect the Henderson Avenue property for the purpose of demolition on August 7, 2001, by certified mail. D & M Financial received that copy on August 13, 2001, the same day D & M Financial received the 48-Hour Notice of Intent to Demolish, which the City had mailed on August 10, 2001. From the time it acquired its interest in the Henderson Avenue property on February 15, 2001, until August 13, 2001, the date demolition occurred, D & M Financial had not received any notice issued by the City of its proceeding to demolish the property.

Thus the City failed to comply with its own statutory notice requirements and its own procedures, even after it had actual knowledge of the interest of D & M Financial in the Henderson Avenue property.

### e. The City, Even Under the Legal Authority on Which It Relies, Failed to Satisfy Due Process Requirements

The City argues that under the due process clause of the Fourteenth Amendment of the United States Constitution, its recordation of a Declaration of Substandard Property seven months before D & M Financial acquired its

security interest in the Henderson Avenue property gave adequate notice to D & M Financial that demolition of a building would occur at the property. We find that the legal authority relied on by the City does not support its position.

The City primarily relies on *Kornblum v. St. Louis County, Mo.* (8th Cir. 1995) 72 F.3d 661. *Kornblum* held that because the county contemplated demolition of a house, notice to the owners by mail or personal service was constitutionally required if their names and addresses were reasonably ascertainable, and some form of notice to future purchasers was required. (*Id.* at p. 663.) *Kornblum* found that a county's unreasonable failure to comply with its own recording ordinance violated due process. (*Id.* at p. 664.)

We have already found that the City's July 17, 2000, recorded Declaration of Substandard Property for the Henderson Avenue property did not place a prospective encumbrancer on notice that City intended to demolish a structure on that property. Neither did the action by the BEAC on November 20, 2000. That action stated that "no person claiming any interest in the properties, buildings or structures" had appeared before the BEAC to object to the Building Official's findings, that the BEAC adopted the Building Official's findings as the BEAC's findings, and that the BEAC determined "that the buildings or structures described in the Findings are substandard and public nuisances, and order the owners to demolish or rehabilitate the buildings or structures in the manner and within the time frame described in staff's 'Suggested Board Action.' " This order also had alternative provisions, giving the property owner the option to rehabilitate or demolish. This order was not recorded. Thus it gave no notice to a prospective purchaser such as D & M Financial.

Under *Kornblum*, neither of these documents placed D & M Financial on constructive notice of the City's intent to demolish structures at that property.

■ As occurred in *Kornblum*, "delay in demolishing the property contributed significantly to the unreasonableness of the notice in this case." (*Kornblum v. St. Louis County, Mo., supra*, 72 F.3d at p. 664.) More than a year passed between the July 17, 2000, recordation of notice of substandard property and the ultimate demolition of structures at 1462–1468 Henderson Avenue on August 14, 2001. As in *Kornblum*, the City is charged with knowing that because of such delay, the identity of people who want notice frequently changes over time. The more than one-year delay before demolition "created a foreseeable and appreciable risk that [the City's] action would affect a set of interested parties different from those whose interests were affected when the [building] was declared a nuisance." (*Ibid.*) This foreseeable risk that new parties would acquire ownership interests in the Henderson Avenue property in the period between the initial notice of substandard property and

the ultimate demolition makes it reasonable to require additional efforts by the City to determine those parties and to give them actual notice of actions affecting structures on the Henderson Avenue property. The City failed to do so.

### f. Absence of Notice to D & M Financial of Pending Demolition Affected Its Due Process Right to Receive Notice That It Could Correct Problems by Repair

The absence of notice of pending demolition also affected the due process rights of D & M Financial by failing to give it notice that it had the right to correct the problems with the structures by repairing them. Before destroying a building, a municipality must give the owner sufficient notice, a hearing, and an opportunity to repair the building. (*Hawthorne Savings & Loan Assn. v. City of Signal Hill, supra,* 19 Cal.App.4th at p. 159.) Health and Safety Code section 17980, subdivision (b) codifies a property owner's constitutional right to choose to repair or to demolish a building that is substandard or a nuisance. (*Hawthorne,* at pp. 159–160.) Although this constitutional right is subject to several conditions, where no emergency exists and the City has not afforded a property owner the choice between repair and demolition, the City violates the property owner's right to due process and violates Health and Safety Code section 17980. (*Hawthorne,* at pp. 160–161.) Although a change of ownership does not extend the time period for repair of substandard property, due process does require that succeeding owners be given notice that the City has offered the option to repair or demolish and of the time within which to exercise this option. (*Id.* at p. 162; see also *Friedman v. City of Los Angeles, supra,* 52 Cal.App.3d at pp. 321–322.) The City's failure to provide notice to D & M Financial precluded D & M Financial from exercising its repair option, and thereby violated its due process rights.

### 4. Conclusion

We find that by demolishing structures after failing to provide D & M Financial with notice, an opportunity to be heard, and the opportunity to correct defects at the property, the City of Long Beach violated the due process rights of D & M Financial. Therefore the judgment for inverse condemnation is affirmed.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 165.

## VI. DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to plaintiff D & M Financial Corporation.

Croskey, Acting P. J., and Aldrich, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 10, 2006, S141799. George, C. J., did not participate therein.