Filed 5/27/14  Encinitas Country Day School v. County of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ENCINITAS COUNTRY DAY SCHOOL, INC., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> COUNTY OF SAN DIEGO, <br><br> Defendant and Respondent. | D063098 <br><br><br> (Super. Ct. No. 37-2009-00050112-CU-JR-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline

M. Stern, Judge.  Affirmed.

Rowe Allen Mullen, LLP, Martin J. Mullen and James S. Brasher, for Plaintiffs

and Appellants.

Thomas E. Montgomery, County Counsel, and Walter J. de Lorrell III, Deputy

County Counsel, for Defendants and Respondents.

Encinitas Country Day School, Inc. (ECDS) agreed to lease real property from

M&M Development, LLC (M&M).  After ECDS recorded the lease in 2004, the San

Diego County Assessor (Assessor) determined a change in ownership of the property had occurred and reassessed the property's value. ECDS and M&M sought review of that determination by the Assessment Appeals Board (Board), arguing the change in ownership actually occurred in 1997 when they signed a letter of intent to enter a lease. The Board disagreed, finding the change in ownership occurred when the actual lease was executed. ECDS and M&M unsuccessfully appealed the Board's ruling to the San Diego County Superior Court, which entered judgment in favor of the Board. We affirm that judgment.

FACTUAL AND PROCEDURAL BACKGROUD

On January 5, 1997, the owners of the property at issue, located at 3616 Manchester Avenue in Encinitas, entered into a letter of intent (LOI) with ECDS to develop the property for a new school site. The LOI, signed by Kathleen M. Porterfield for ECDS and Geoffrey O. Mavis "for the owners,"[1] stated that "[a]fter looking at numerous properties, we have decided to work toward developing the Manchester property as the only viable option." The LOI provided "[i]n our agreement to develop the property, you (K. Porterfield), will work [to] develop the concept and acquire the necessary permits; I (G. Mavis), will provide for the hard costs of the project (architectural, engineering, permit fees, administrative and legal consulting, environmental review, construction and all costs related to the development)."

---

[1]  The LOI stated "[t]he property is currently owned by four owners and will be placed in an LLC shortly." The property was later transferred to M&M.

2

According to the LOI, Mavis would "enter into [a] formal lease agreement" with ECDS once the project had been approved and development had begun. Under the proposed lease agreement, as set forth in the LOI, the school would be entitled to occupy the premises for the maximum legal term allowed by law of 99 years, with the option to renew in perpetuity; the school would pay rent based on a percentage of its tuition income yearly, to be determined after M&M's investment in the property was fixed; and the owners would be "responsible for all funding, insurance and property taxes connected with the property." The LOI concluded: "The above notwithstanding this is to be construed as a letter of intent and the details will be spelled out in the lease."

After the LOI was executed, ECDS began the process of obtaining the necessary permits for the development of the school. In November 1998, the City of Encinitas approved a major use permit, design review permit and coastal development permit. The city's approval was appealed to the California Coastal Commission (Commission), which denied the coastal development permit. ECDS and M&M challenged the Commission's denial of the permit by a petition for writ of mandate in San Diego County Superior Court. The court granted the petition, finding the Commission lacked appeal jurisdiction over the property. Thereafter, ECDS and M&M brought an inverse condemnation and regulatory takings claim in superior court based on the delay to the school's development caused by the Commission's improper denial.

At the trial on the takings claim, the Commission argued ECDS and M&M lacked standing to pursue the claim because they did not have a recognizable property interest in the school. In its trial brief, the Commission stated: "[ECDS] and M&M have not yet

3

entered into a lease agreement for the operation of a school on the subject property. . . . [The LOI] contains no description of the property which will be subject to any lease or a mechanism for determining how much of the property will be included in the lease. Likewise, it does not contain a specific rental amount to be paid for leasing the property or a complete mechanism for determining what the rental amount will be. These omissions in this letter of intent make it unenforceable under California law." The Commission contended an unenforceable agreement, or one that was contingent in nature, could not form the basis for the constitutional relief requested.

After trial, the court issued its statement of decision concluding ECDS and M&M had not established a regulatory taking. The court did, however, find ECDS and M&M collectively had standing to pursue the claim. The court's order stated "[p]laintiffs have the necessary property interest to establish standing regarding the inverse condemnation/regulatory takings cause of action." The plaintiffs appealed and this court affirmed. (*Encinitas Country Day School, Inc. v. California Coastal Com.* (2003) 108 Cal.App.4th 575.)

After the litigation with the Commission concluded, ECDS and M&M continued to pursue the development of the school. On June 28, 2004, ECDS and M&M entered into a written lease agreement. The LOI was referenced in the lease and attached as an exhibit. The term of the lease was for 99 years to commence on September 1, 2005, or earlier if the property was occupied by ECDS with M&M's permission. On July 2, 2004, "to provide constructive notice of [ECDS]'s rights under the Lease to all third parties,"

4

the parties recorded a notarized memorandum of lease with the San Diego County Recorder's office.

After the memorandum of lease was recorded, the Assessor recognized the property as undergoing a change in ownership on March 1, 2005, and reassessed the property on that date. The Assessor selected March 1, 2005, because it was the day ECDS took occupancy of the property and began paying rent. On November 15, 2006, ECDS filed an application for changed assessment with the Board. In the application, ECDS stated that no change in ownership or other assessable event occurred on March 1, 2005, and sought a refund of taxes paid by M&M.

The Board heard ECDS's application on January 31, 2008. Both ECDS and the Assessor presented documents, testimony and argument. ECDS argued a change in ownership had occurred on the date the LOI was executed, January 5, 1997. It also asserted the statement of decision in its case against the Commission collaterally estopped the Board from finding a change in ownership occurred after the date the LOI was executed. The Assessor contended a change in ownership did not occur until March 1, 2005, after ECDS took possession of the property in accordance with the terms of the written lease agreement that was executed on June 28, 2004.

The Assessor argued the LOI did not constitute a change in ownership because according to the LOI's terms, M&M's obligation to enter into the lease agreement and tender possession of the property to ECDS did not arise until ECDS acquired the necessary permits and the school project was approved for development. According to the Assessor, the LOI at most gave ECDS "an interest akin to an option to lease the

5

premises," which does not create a change in ownership until the option is exercised. The Assessor refuted ECDS's claim the Board was collaterally estopped by the earlier case on the grounds that the issues were not identical and it was not in privity with the Commission.

The Board issued its order in July 2008, finding a change in ownership occurred on the date the written lease was executed, June 28, 2004, not the date the LOI was executed, January 5, 1997. It concluded the LOI was not a lease and did not give ECDS a possessory interest sufficient to constitute a change in ownership. The Board rejected ECDS's collateral estoppel argument, agreeing with the Assessor that the earlier decision did "not address the issue of the date on which [ECDS] obtained a possessory interest in the property for purposes of a property tax assessment proceeding." Thereafter, the Assessor reassessed the property in accordance with the Board's order.

On January 8, 2009, ECDS and M&M challenged the Board's order by filing a complaint in Superior Court against the County seeking a property tax refund. The parties stipulated to a briefing schedule and submitted a portion of the administrative record to the trial court. ECDS and M&M's briefing repeated their earlier arguments, contending the LOI constituted a change in ownership for purposes of property tax assessment and that the Board erred by not applying the doctrine of collateral estoppel. The court conducted an evidentiary hearing on July 13, 2012. After the hearing, the court adopted its tentative ruling denying the claim for a tax refund. Like the Board, the court concluded the LOI did not create a leasehold interest that triggered a reassessment of property tax and found the doctrine of collateral estoppel did not apply.

6

DISCUSSION

On appeal, ECDS and M&M contend the trial court erred by failing to apply the doctrine of collateral estoppel to find a change in ownership occurred at the time the LOI was executed.[2] The issue of whether collateral estoppel applies is "a question of law, which question we review de novo." (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 618; see *Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 399.)

I

"Collateral estoppel, or issue preclusion 'precludes relitigation of issues argued and decided in prior proceedings.' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.) Collateral estoppel may be applied if five threshold requirements are met: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 (*Lucido*).) "The party asserting collateral estoppel bears the burden of establishing these requirements." (*Ibid.*)

---

[2] Conceding there was sufficient evidence, ECDS and M&M do not directly challenge the trial court's finding that a change in ownership occurred when it entered into the written lease on June 28, 2004.

7

The doctrine of collateral estoppel exists to promote "judicial economy by minimizing repetitive litigation, preventing inconsistent judgments that undermine the integrity of the judicial system, and providing repose by preventing a person from being harassed by vexatious litigation." (*People v. Lawley* (2002) 27 Cal.4th 102, 163.) However, "even where the minimal prerequisites for invocation of the doctrine are present, collateral estoppel ' "is not an inflexible, universally applicable principle; policy considerations may limit its use where the . . . underpinnings of the doctrine are outweighed by other factors." ' " (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 829.)

## II

ECDS and M&M argue the Assessor was collaterally estopped from determining a change in ownership occurred after the LOI was executed. Specifically, they contend "the exact issue of whether the January 5, 1997 Agreement created a leasehold property interest" was already "litigated and decided by the San Diego Superior Court." (Boldface omitted.) Further, ECDS and M&M assert there is privity between the Commission and the Assessor.[3]

"[T]he issue a party seeks to preclude must have been *identical* to and ' "*necessarily decided* in the former proceeding." ' " (*Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1483.) The identical issue requirement applies only when " ' "an issue of ultimate fact" ' " has been previously

---

[3] There is no dispute concerning the finality of the order in the prior proceeding.

8

decided.  (*People v. Santamaria* (1994) 8 Cal.4th 903, 912.)  An ultimate fact involves the application of law to fact, such as an essential element of a claim or defense.  (*Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 689; Rest.2d Judgments, § 27, com. c; Black's Law Dict. (9th ed. 2009) p. 671, col. 1.)  ECDS and M&M have not met the identity of issues requirement.

The issue, or ultimate fact, here was whether the execution of the LOI constituted a change in ownership for purposes of property tax assessment.  The Assessor's obligation to reassess property requires the occurrence of a statutorily defined event constituting a "change in ownership."  (Rev. & Tax. Code, § 60.)[4]  Under the code, the assessing officer of the county must annually assess all taxable property at its full value and reappraise property when a change in ownership occurs.  (*Blackwell Homes v. County of Santa Clara* (1991) 226 Cal.App.3d 1009, 1013; § 75.10, subd. (a).)  A change in ownership is defined as "a transfer of a present interest in real property, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest."  (§ 60.)  Such a change includes "[t]he creation of a leasehold interest in taxable real property for a term of 35 years or more (including renewal options)."  (§ 61, subd. (c)(1)(A).)

The issue in the prior proceeding, in contrast, was whether the plaintiffs could establish standing for inverse condemnation purposes by showing they had some compensable property interest.  Unlike the creation of a long-term lease required to

---

4       All statutory references are to the Revenue and Taxation Code.

9

establish a change in ownership in this proceeding, the right to compensation for a regulatory taking claim "does not turn on strict categories of estates in real property or contractual rights." (*D & M Financial Corp. v. City of Long Beach* (2006) 136 Cal.App.4th 165, 176 (*D & M Financial*).) Standing is " 'determined by whether the *condemnation has deprived the claimant of a valuable right* rather than by whether his right can technically be called an "estate" or "interest" in the land.' " (*County of San Diego v. Miller* (1975) 13 Cal.3d 684, 691 (*Miller*).)

Plaintiffs with sufficient compensable interests to establish standing to pursue an inverse condemnation claim include holders of "easements, rights-of-way, and building restrictions [citation], a holder of an unexercised option to purchase property [citation], a mortgagor whose interest has been foreclosed, the executor of a property owner's estate in which the decedent held an interest with a spouse, and an insurer-subrogee seeking recovery in the name of the insurer or of its insured." (*D & M Financial*, *supra*, 136 Cal.App.4th at p. 176.) A future right to lease the property, akin to an option, is also sufficient. (See *Miller*, *supra*, 13 Cal.3d at p. 693 ["the owner of an unexercised option to purchase land possesses a property right which — if taken by government — is compensable"].)[5] Unlike here, to establish standing, ECDS did not need to show the LOI created "a leasehold interest . . . for a term of 35 years or more." (§ 61, subd. (c)(1)(A).)

---

5    At oral argument, citing *Miller*, counsel suggested the court in the inverse condemnation proceeding necessarily concluded the LOI created a leasehold interest because that was the only compensable property interest that could be found based on the evidence. However, *Miller* does not set forth a static list of compensable property interests. What may be considered a compensable property interest for purposes of a

10

ECDS and M&M also argue the court's finding in the prior litigation that they had standing to pursue an inverse condemnation claim "was founded upon the [c]ourt's determination that the [LOI] established a leasehold interest in favor of ECDS." It was this finding, according to ECDS and M&M, which provided ECDS with a sufficient property interest to pursue the inverse condemnation claim. They contend "by finding ECDS had standing through the [LOI], [the court] necessarily found that the [LOI] created a leasehold interest."

We disagree. An issue is necessarily decided so long as it is not " 'entirely unnecessary' to the judgment in the initial proceeding." (*Lucido*, *supra*, 51 Cal.3d at p. 342.) The issue that was litigated in the inverse condemnation proceeding was whether the LOI provided ECDS and M&M with a sufficient compensable property interest in the development of the school such that they could pursue the inverse condemnation claim. The court found that it did. To reach this conclusion, the court did not need to reach the issue of whether the LOI created "a leasehold interest in taxable real property for a term of 35 years or more." (§ 61, subd. (c)(1)(A).) Such a finding was "entirely unnecessary" to the standing determination.[6] (*First N.B.S. Corp. v. Gabrielsen* (1986) 179 Cal.App.3d

_____

takings claim is broadly defined and could include an option for a long-term lease. (*Agins v. Tiburon* (1979) 24 Cal.3d 266, 273; see *San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 531 [noting "a contractual option to renew an existing lease" is a compensable property interest].)

[6]     Because this finding was not necessary to the determination of the "principal controverted issue[]" of whether ECDS and M&M had a sufficient compensable property interest to pursue their claim for inverse condemnation, the statement of decision was not required to address it. (Code of Civ. Proc., § 632; see *ibid*. [statement of decision

11

1189, 1196.) As discussed, all that was required in the prior proceeding was a finding ECDS and M&M were deprived of *some* valuable property right. (*D & M Financial*, *supra*, 136 Cal.App.4th at p. 176.) To this end, the statement of decision in the inverse condemnation proceeding does not find that the LOI created a leasehold interest. It states simply ECDS and M&M collectively had "the necessary property interest to establish standing regarding the inverse condemnation/regulatory takings cause of action."[7]

For these reasons, we conclude collateral estoppel did not bar the court's finding that a change in ownership occurred in 2004.[8]

---

explains "the factual and legal basis for [the] decision as to each of the principal controverted issues" of the case]; *Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513 ["[A] statement of decision is adequate if it fairly discloses the determinations as to the ultimate facts and material issues in the case."].)

[7] We reject ECDS and M&M's claim that the court necessarily found the LOI created a lease within the meaning of section 61, subdivision (c)(1)(A) because the parties briefed that issue in their underlying papers. If a finding that the LOI created a leasehold interest for more than 35 years was material to the court's inverse condemnation decision, it was incumbent on ECDS and M&M to bring that deficiency in the statement of decision to the trial court's attention. (Code of Civ. Proc., § 634; see *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134 ["if a party does not bring [deficiencies in the statement of decision] to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient in these regards"].) They did not do so.

[8] Because the other prerequisites for establishing collateral estoppel were not met, it is unnecessary to address ECDS and M&M's claim of privity between the Commission and the Assessor. (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 945, fn. 14.)

DISPOSITION

The judgment is affirmed.

                                                          _____
                                                                    IRION, J.

WE CONCUR:


_____
        HALLER, Acting P. J.


_____
        AARON, J.

13